GAY et al. v. HUDSON RIVER ELECTRIC POWER CO. et al. SAME v. HUDSON RIVER ELECTRIC POWER CO. KNICKERBOCKER TRUST CO. v. GAY et al.

(Circuit Court, N. D. New York. November 17, 1910.)

1. JUDGMENT (§ 772*)—LIENS—ACCRUAL—STATE LAWS.

Under the laws of New York, a judgment becomes a lien on real estate from the time it is docketed in the county where the real estate is situated, and on personal property from the date of execution issued and placed in the hands of the sheriff for levy, subject, however, with reference to both classes of property, to all valid mortgage liens thereon.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1329, 1332; Dec. Dig. § 772.*]

2. CORPORATIONS (§ 566*)—INSOLVENCY—RECEIVERS—PREFERRED CLAIMS.

A judgment having been recovered against a corporation March 21, 1908, petitioner became surety on the corporation's supersedeas bond pending appeal, and, the judgment having been affirmed, petitioner was compelled to pay the judgment prior to which the corporation had become insolvent and had been placed in the hands of a receiver. There was no

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

claim, however, that at the time the bond was executed the corporation was insolvent, that any execution had been issued on the judgment, or levy made on the corporation's property, or that it could not have paid the judgment out of its current receipts, nor did it appear that the execution of the bond extended in any way the life of the corporation as a growing concern, or operated to the benefit of its creditors. *Held*, that petitioner was not entitled to the allowance of its claim for the amount so paid on the supersedeas bond as a preferred claim to those of the mortgage bondholders of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2283, 2284; Dec. Dig. § 566.*]

Insolvency proceedings by Eben H. Gay and others against the Hudson River Electric Power Company and others, and by the Knickerbocker Trust Company, as trustee, cross-complainant, against Gay and others, in which the National Surety Company applied to intervene as a party defendant to the cross-bill to have its claim established and to be reimbursed the amount paid by it as surety on an appeal bond given by the power company to stay execution in a suit wherein Claude W. Waddell had recovered a judgment against said company for $5,330.29 for damages and costs in an action for negligence, in preference to the mortgage bondholders of the corporation. Petition denied.

See, also, 182 Fed. 279.

Rockwood, McKnight & McKelvey, for petitioner National Surety Co.

Winthrop & Stimson, for Guaranty Trust Co.

Abram J. Rose and Geo. B. Curtiss, for receivers.

RAY, District Judge. In April, 1907, Claude W. Waddell brought suit in the Supreme Court of the state of New York against the Hudson River Electric Power Company, a domestic corporation of the state of New York, to recover damages for injuries claimed to have been sustained by him by reason of the negligence of said Hudson River Company. On the trial of that action the plaintiff recovered a judgment for damages $5,000 and costs, $330.29, in all $5,330.29, and judgment was entered March 21, 1908, and before the appointment of receivers herein or the commencement of this equity action.

October 29, 1908, in equity actions above entitled in the Circuit Court of the United States for the Northern District of New York, alleging the insolvency of the eight companies above named, mismanagement, waste, etc., of their properties, receivers of the properties of said companies, including the Hudson River Electric Power Company, were appointed and put in possession of all such properties with authority to run same and conduct the business which they have been doing since.

Prior thereto, and about January 2, 1904, said Hudson River Electric Power Company had given to Knickerbocker Trust Company, as trustee, a mortgage on all its properties and all after-acquired property in the sum of $5,000,000 to secure certain refunding bonds which were issued to the amount of $4,222,000 and sold to bona fide holders. This mortgage was duly recorded in the counties of Saratoga

and Warren, where the real estate and property of the defendant, Hudson River Electric Power Company, is situated, on the 6th day of January, 1904.

April 8, 1908, before the appointment of such receivers, the said Hudson River Electric Power Company duly appealed from the said judgment in favor of Waddell to the Appellate Division of the Supreme Court of the state of New York, and, to stay the execution of the said judgment and prevent a levy upon and sale of the property of the said company, appellant, it applied to the National Surety Company for a bond or undertaking which it was necessary to give to secure such stay, and which application was granted and such bond given accordingly. By such bond the said surety company, in effect, undertook and agreed, if the judgment appealed from should be affirmed, to pay all costs awarded on such appeal not exceeding $500, and also the sum recovered or directed to be paid by such judgment so affirmed. At a term of the Appellate Division of said Supreme Court commencing March 14, 1909, said judgment was in all things affirmed, with $103.73 costs, and judgment on affirmance was duly entered. The said Hudson River Company did not pay said judgments or any part of same, and April 23, 1910, said surety company in discharge of its undertaking and on demand duly made paid said judgments, in all $6,105.03. Thereafter, and before the commencement of this proceeding for intervention, and about June 7, 1910, the said surety company made demand on the receivers for such sum of $6,105.03, and presented a duly verified claim therefor, alleging and claiming that same was and is a preferred claim over and above that of all general creditors of said company, and over and above all mortgages and bondholders, and that the said surety company would insist upon the payment of same prior to the payment of general creditors, mortgagees, and bondholders. This demand the receivers did not accede to and rejected the claim made. An action to foreclose the trust mortgage, authorized by this court and ancillary to the said main equity action, is now pending; default having been made in the payment of interest, and by election under the terms of the mortgage the principal having become due, but decree has not been entered.

Under the laws of the state of New York, a judgment duly docketed in the county where real estate is situated becomes a lien on the real estate of the defendant, but such judgment is a lien subsequent and subject to all valid mortgage liens. When execution is issued on such a judgment and placed in the hands of the sheriff, a lien is created on all personal property of the defendant subject to levy and sale on execution, but such lien is secondary and subject to mortgage liens, if any, on such personal property. Under the law and such a trust mortgage as this is, a valid lien and may be and is created on all the property of the corporation, real and personal, then owned and held or thereafter acquired by it. There is no suggestion in the moving papers that an execution was issued on the judgment in favor of Waddell, or that a levy was made on any personal property. There is no suggestion in the moving papers that the receivers had anything to do with bringing or prosecuting the appeal. In fact, the appeal was taken and the bond given about seven months prior to the ap-

pointment of the receivers and the filing of the bill in the equity suits in which such appointment was made. There is no suggestion in the moving papers that the Hudson River Electric Power Company had any property not covered by the mortgage or which might have been levied upon, taken or sold, as against such mortgage lien, and that by the giving of such bond such property was released or saved to the company and the receivers subsequently appointed.

The theory of the surety company, as stated in the brief of its counsel, submitted on this application, is as follows:

"The bond given by the petitioner having been given for the purpose of staying the execution of the judgment appealed from, and thus protecting the property of the defendant company from levy and sale, and of the disruption of and interference with its business and for the purpose of continuing the business of said company as a going concern, and thus operating for the benefit of the mortgagee and the holders of bonds issued under said mortgage, the petitioner asserts that it has a valid claim which is entitled to priority over the claims of bondholders and general creditors and should be paid by the receivers prior to the payment of any sum whatever on account of the bonds or general creditors."

In Trust & Savings Bank v. Doud, 105 Fed. 123, 44 C. C. A. 389, 52 L. R. A. 481, it was said:

"The test of equity which entitles the claim to preference over the mortgage in foreclosure is the consideration of the claim; whether it was or was not for a part of the current expenses of ordinary operation within a limited time before the receivership."

If the giving of the bond above mentioned released property or in any way saved property from levy and sale, which may now be held by the receivers for the bondholders, and which otherwise would not have come to them, or which has come to the hands of the receivers, and which the Knickerbocker Trust Company will hold under its mortgage, it may be said that the giving of the bond preserved so much property to the holders of the mortgage bonds, and that equitably, this property having been preserved by the act of the surety company to the mortgage bondholders, they should not profit at the expense of the surety company, and that it should have a lien to the amount of the value of such property ahead of the lien of the mortgage. If the giving of the bond saved the Hudson River Electric Power Company from bankruptcy or insolvency and served to keep it and its business alive as a going concern and its property together to the benefit of the mortgage bondholders, we may have an equity which under some of the cases would entitle the surety company to priority over the mortgage bondholders. But I find no allegation in the moving papers that the giving of the bond or undertaking was for any such purpose, or that it had any such effect. There is no allegation to the effect that this company was insolvent in April, 1908, or that at that time the corporation could not have paid the judgment from money belonging to it, not covered by the lien of the mortgage, and available for the purpose. There was no default in the payment of interest on the trust mortgage until August 1, 1908, and as it was not paid within the six months following, and demand was made thereupon at the expiration of such time election was made to declare the principal sum due under and pursuant to the terms of the

mortgage. This is not a case, so far as alleged, where property of the corporation or current earnings have been used for the benefit of the mortgage bondholders which should not have been so applied but should have been used, or if on hand might be used, to pay the demand for which the surety company became responsible and which it has paid. It is undoubtedly true that, where a corporation neglects to pay its current operating expenses with its current earnings, and applies such earnings to the purchase of property which goes under the lien of the mortgage or in any way directly to the benefit of the mortgage bondholders, the mortgage security is chargeable in equity with the restoration of the fund so improperly applied to the benefit of the bondholders. Burnham v. Bowen, 111 U. S. 776, 780, 783, 4 Sup. Ct. 675, 28 L. Ed. 596; St. Louis, etc., R. R. v. Cleveland, etc., R. R., 125 U. S. 673, 8 Sup. Ct. 1011, 31 L. Ed. 832.

Burnham v. Bowen, supra, decides:

"Debts contracted by a railroad corporation as part of necessary operating expenses (for fuel, for example), the mortgage interest of the company being in arrear at the time, are privileged debts, entitled to be paid out of current income, if the mortgage trustees take possession, or if a receiver is appointed in a foreclosure suit.

"If the current income of the road is diverted to the improvement of the property by the trustees in possession or by the receiver, and the mortgage is foreclosed without payment of such debts for operating expenses, an order should be made for their payment out of the fund if the property is sold, or if a strict foreclosure is had they should be charged upon income after foreclosure."

It is contended that Union Trust Co. v. Morrison, 125 U. S. 591, 612, 8 Sup. Ct. 1004, 1010 (31 L. Ed. 825), is authority for holding that the National Surety Company is entitled to preference over the mortgage bondholders represented by the Knickerbocker Trust Company. I cannot so read that case. The court, after pointing out the special and unusual equities of the case, said:

"The case is a special one, and in view of the discretion which the court of first instance is obliged to exercise in matters of this character, taking all the circumstances into consideration, we cannot say that equitable relief was unduly extended in allowing the intervenors' claim."

The court then cites several cases, including Burnham v. Bowen, supra, and says:

"It is not our intention, however, to decide anything in the present case in conflict with it. The claim in that case was for operating expenses only, and the rule laid down had special reference to them. The present claim is of a different character, based upon a bona fide effort made by the intervener to preserve the fund itself from waste and spoliation after the mortgage was in arrears and the right to reduce it to possession had accrued. But even here, as we have seen, if the claimant could pursue only the earnings, it is shown that they have been appropriated to the purchase of property which has been added to the fund."

These controlling features are wholly absent from this case. When the bond was executed and delivered, the Hudson River Electric Power Company, so far as appears, was doing business in the usual way and was apparently solvent. No execution had been issued, and no property had been levied upon, and the corporation was not in default in the payment of its interest or current expenses so far as ap-

pears. The mortgage bondholders had no right to possess themselves of the mortgaged property or to interfere with the operations of the corporation at that time. It is probably true that an execution would have been issued and a levy made if the judgment had not been paid or the bond given; but, as already stated, it is not charged that the corporation did not at the time have money properly applicable thereto with which to pay the judgment, which was for damages for negligence, and not an ordinary operating expense. Of course, the negligence was in operating the business, and gave rise to the cause of action, and in such sense was an operating liability. But still there is no allegation that current earnings which should or which might have been used to pay this liability were diverted to the purchase of property which has gone under the lien of the mortgage, or to the permanent improvement of such property or in reduction of the bonded debt. Suppose the claim sued upon had been for property purchased and used in the business of the corporation generally, for repairs, changes, and operation, and defense had been made, judgment rendered against the corporation, and a bond given to stay execution on appeal, and the judgment affirmed and payment made by the sureties. Would the sureties be entitled to a preference over the mortgage bondholders? I think not. There would be no more equity in such case than in most cases where litigation is had, judgment obtained, and bonds given to stay execution, which judgments the sureties are compelled to pay if the principal does not.

I think my decision in this case should be controlled by Whiteley v. Central Trust Company of N. Y., 76 Fed. 74, 22 C. C. A. 67, 34 L. R. A. 303, where Trust Co. v. Morrison, supra, and many other cases, were considered and explained by Lurton, C. J., now of the Supreme Court of the United States, Taft, C. J., and Hammond, D. J., concurring, and Pennsylvania Steel Co. v. N. Y. City R. Co. et al. (C. C.) 165 Fed. 485. I quote from syllabus of both cases:

"A surety upon a supersedeas bond given by a railroad company while apparently solvent, and not in default in interest, if compelled, after the insolvency of the company, to pay the judgment appealed from, is not entitled to be repaid from the proceeds of the property of the company in preference to the mortgagee thereof."

"The surety on supersedeas bonds given by a street railroad company on appeals from judgments against it, which has been compelled to pay such judgments on their affirmance after the insolvency of the company, is not entitled to rank as a preferred creditor in the insolvency proceedings against the company with creditors having claims for supplies furnished to keep the road in operation."

I am aware that the decisions on this subject are not all in harmony. Authority for this contention of the petitioner, National Surety Company, may be found in Farmers' L. & T. Co. v. North. Pac. R. R. Co. (C. C.) 71 Fed. 245; but I consider this case at war with the other cases cited. It is true that in Pennsylvania Steel Co. v. New York City R. Co., supra, the statement is that the judgments sought to be established as entitled to preference were usually in actions "for tort"; but I assume from the nature of defendant's business that they were judgments in actions to recover damages for negligence in operating the road. It is also true that in the Whiteley Case, supra, the

judgment was for damages for breach of covenants contained in a conveyance under which the railway company had acquired a right of way through certain lands. That is, the judgment was not for damages growing out of negligence in operating the road. But, conceding this judgment paid by this petitioner to have been an operating expense and one incurred within a reasonable time before the receivership, still can it be said it was one of "the current expenses of ordinary operation," and where is there an allegation that the corporation neglected to pay its current operating expenses with its current earnings, or that it applied such earnings to the purchase of property which went under the lien of the mortgage or in any way directly to the benefit of the mortgage bondholders? Clearly this case is not within the general rule laid down in Burnham v. Bowen, supra. When a case is not within the general rule, it must present special features which bring it within the spirit of such rule. See opinion of Lurton, C. J., in Whiteley Case, supra, at pages 75, 76 of 76 Fed., at page 70 of 22 C. C. A. (34 L. R. A. 303). In that case the learned judge also said:

"Such cases as Fosdick v. Schall, 99 U. S. 235 [25 L. Ed. 339]; Miltenberger v. Railroad Co., 106 U. S. 286, 1 Sup. Ct. 140 [27 L. Ed. 117]; Dow v. Railroad Co., 124 U. S. 652, 8 Sup. Ct. 673 [31 L. Ed. 565]; and Sage v. Railroad Co., 125 U. S. 361, 8 Sup. Ct. 887 [31 L. Ed. 694]—seem to rest upon the doctrine that railroad mortgagees impliedly agree that current earnings shall be first applied to current operating expenses, and, if diverted to the payment of interest on the mortgage debts, may be followed, or such creditors subrogated to the rights of mortgagees, to the extent of such diversion. That those cases have carried the rule of displacing mortgage debts as far as the courts feel justified is made very clear by the emphatic declarations of the Supreme Court in Kneeland v. Trust Co., 136 U. S. 97, 10 Sup. Ct. 950 [34 L. Ed. 379], and Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824 [37 L. Ed. 663]. See, also, Morgan's L. & T. R. & S. S. Co. v. Texas Cent. Ry. Co., 137 U. S. 171–194, et seq., 11 Sup. Ct. 61 [34 L. Ed. 625]."

In Kneeland v. American Loan Co., 136 U. S. 89, 10 Sup. Ct. 950, 34 L. Ed. 379, the court held that, where a receiver of a railroad was appointed, and there came in his possession, with the other property, certain rolling stock which he continued to use in operating the road until it appeared the road was being run at a loss, when the receiver failed to pay rent, the rent up to the time of the appointment of the receiver was not to be preferred to the mortgage liens, but that the rent of such rolling stock thereafter and while in the hands of the receiver was. In so holding and modifying the decree below, the court, per Brewer, J., said:

"Because in a few specified and limited cases this court has declared that unsecured claims were entitled to priority over mortgage debts, an idea seems to have obtained that a court appointing a receiver acquires power to give such preference to any general and unsecured claims. It has been assumed that a court appointing a receiver could rightfully burden the mortgaged property for the payment of any unsecured indebtedness. Indeed, we are advised that some courts have made the appointment of a receiver conditional upon the payment of all unsecured indebtedness in preference to the mortgage liens sought to be enforced. Can anything be conceived which more thoroughly destroys the sacredness of contract obligations? One holding a mortgage debt upon a railroad has the same right to demand and expect of the court respect for his vested and contracted priority as the holder of a mort-

gage on a farm or lot. So, when a court appoints a receiver of railroad property, it has no right to make that receivership conditional on the payment of other than those few unsecured claims which, by the rulings of this court, have been declared to have an equitable priority. No one is bound to sell to a railroad company or to work for it, and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens. It is the exception and not the rule that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens, for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens."

In Thomas v. Western Car Company, 149 U. S. 95, 110, 13 Sup. Ct. 824, 831 (37 L. Ed. 663), we find an instructive statement as to the class of unpaid operating expenses the court may prefer to the mortgage lien and the time within which such obligation must have been incurred. The court said:

"It is easy to see that the payment of unpaid debts for operating expenses, accrued within 90 days, due by a railroad company suddenly deprived of the control of its property, due to operatives in its employ, whose cessation from work simultaneously is to be deprecated, in the interests both of the property and of the public, and the payment of limited amounts due to other and connecting lines of road for materials and repairs, and for unpaid ticket and freight balances, the outcome of indispensable business relations, when a stoppage of the continuance of such business relations would be a probable result, in case of nonpayment, the general consequence involving largely, also, the interests and accommodation of travel and traffic, may well place such payments in the category of payments to preserve the mortgaged property in a large sense, by maintaining the good will and integrity of the enterprise, and entitle them to be made a first lien."

Here the judgment paid by the petitioner was duly rendered and docketed more than six months prior to the appointment of the receivers. When the negligent act was done in operating the plant or business of the power company which created the cause of action does not appear. So far as is alleged, the surety company in executing the appeal bond and becoming surety for the judgment relied upon the credit of the corporation and its current earnings and not upon any specific property not subject to the mortgage and subsequently placed under the lien thereof. It was charged with notice of the mortgage lien by the recording laws of the state of New York and became surety with full knowledge thereof and made its contract with reference thereto. It was not acting in aid of the court or of the receivers or at the request, express or implied, of the mortgage bondholders or their trustee, or even with their knowledge. In all these particulars this case is not within the Morrison Case. If regarded as an operating expense, the claim for which the surety company became responsible accrued so long prior to the receivership and under such circumstances and conditions that it cannot be regarded as one which, on its payment subsequent to the appointment of the receivers, may be made a lien prior to that of the mortgage, and this is especially so in view of the facts that there is no allegation that current income which should have been held and applied or held to apply to the payment of this claim was diverted directly or indirectly to the benefit of the mortgage bondholders, and that there is no allegation, or showing

of facts, that the giving of the bond was necessary or even operated to keep the corporation "a going concern."

In Southern Railway Company v. Carnegie Steel Company, 176 U. S. 257, 285, 20 Sup. Ct. 347, 358 (44 L. Ed. 458), this subject was extensively considered and the opinion of the court says:

"But it may be safely affirmed, upon the authority of former decisions, that a railroad mortgagee when accepting his security impliedly agrees that the current debts of a railroad company contracted in the ordinary course of its business shall be paid out of current receipts before he has any claim upon such income; that, within this rule, a debt not contracted upon the personal credit of the company, but to keep the railroad itself in condition to be used with reasonable safety for the transportation of persons and property, and with the expectation of the parties that it was to be met out of the current receipts of the company, may be treated as a current debt; that whether the debt was contracted upon the personal credit of the company, without any reference to its receipts, is to be determined in each case by the amount of the debt, the time and terms of payment, and all other circumstances attending the transaction; and that, when current earnings are used for the benefit of mortgage creditors before current expenses are paid, the mortgage security is chargeable in equity with the restoration of any funds thus improperly diverted from their primary use."

Taking all the facts alleged in the petition as true, and supplement them with the additional facts shown in the affidavit of Mr. Seay as to the terms of the mortgage and the time of default, which are not controverted or questioned, and which was filed in opposition to the granting of this application, I am of opinion, and hold, that no case for intervention is made. Should intervention be permitted, and should all the facts appear as alleged and supplemented in the way stated, and stand uncontradicted, preference could not be allowed. The foreclosure proceedings should not be delayed by allowing this intervention on the facts stated. If I am wrong, the Circuit Court of Appeals will correct the error, and, even if the property has gone to a sale, the rights of the petitioner here can be protected at any time before distribution.

Application to intervene is therefore denied, but without prejudice to a renewal thereof should the petitioner be so advised, and provided it is made at the Utica term of this court, commencing December 6, 1910.