MARTIN METAL MFG. CO. v. UNITED STATES & MEXICAN TRUST CO. et al.

(Circuit Court of Appeals, Eighth Circuit. July 2, 1915.)

No. 4366.

*(Syllabus by the Court.)*

1. RAILROADS ⟨KEY⟩171—RECEIVERS—ALLOWANCE OF CLAIMS—PRIORITY.

The claim of a creditor for payment out of the corpus of railroad property for necessary supplies furnished to a railroad company and used in the operation of the railroad is inferior in equity to the claims of bondholders under a prior mortgage, and is not entitled to preference in payment over them, in the absence of the diversion to the payment of unpreferred claims of current income from the payment of current expenses for wages, materials, supplies, and such necessities of operation.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 554–576; Dec. Dig. ⟨KEY⟩171.]

2. RAILROADS ⟨KEY⟩171—RECEIVERS—ALLOWANCE OF CLAIMS—PRIORITY.

The expectation of a claimant, when he sells supplies or loans money to a mortgagor railroad company necessary for its operation, that he will be paid out of the current income of the company, is not sufficient to take a claim, otherwise not preferential, out of its class, and transfer it to the class entitled in equity to preference in payment over the claims of bondholders secured by a prior mortgage.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 554–576; Dec. Dig. ⟨KEY⟩171.]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit by the United States & Mexican Trust Company and others against the Kansas City, Mexico & Orient Railway Company and others. From an order allowing the claim of the Martin Metal Manufacturing Company, intervener, as a general creditor, but denying it preference in payment out of mortgaged property, it appeals. Affirmed.

Jean Madalene, of Wichita, Kan. (S. B. Amidon, of Wichita, Kan., on the brief), for appellant.

F. H. Moore, of Kansas City, Mo. (Samuel Untermyer, of New York City, and Samuel W. Moore, of Kansas City, Mo., on the brief), for appellees.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

SANBORN, Circuit Judge. This is an appeal from an order allowing the claim of the intervener and appellant as a general creditor, but denying it a preference in payment out of the mortgaged property over the claims of the bondholders secured by a prior mortgage made February 1, 1901, upon the property, the after-acquired property, and the income of the Kansas City, Mexico & Orient Railway Company. A creditors' bill was filed against the Railway Company on March 7, 1912, under which the court appointed receivers, who took possession of its property. Subsequently, on August 7, 1912, the trustee under the mortgage brought a bill to foreclose it, and on December 26, 1912, the latter suit was consolidated with the former, the receivership was extended over it, and the income and property of the Railway Company was thereafter impounded for the benefit of the mortgage bondholders. On February 2, 1914, a decree of foreclosure of the mortgage and of sale of the mortgaged property was rendered, wherein the court adjudged that the mortgage was a first lien upon the property to secure the payment of bonds issued thereunder to the aggregate amount of $24,538,000. On January 27, 1914, the Martin Metal Manufacturing Company intervened in the consolidated cause, prayed that its claim for $1,730.20, the purchase price of certain tanks, culverts, and parts of culverts which the Railway Company bought between October 18 and December 10, 1911, and used in the operation of the railroad, should be paid out of the income or out of the proceeds of the mortgaged property in preference to the payment of the claims of the mortgage bondholders. The intervener alleged in its petition its sale of its property to the Railway Company and the latter's use of it in the operation of the railroad within six months preceding the appointment of the receivers under the creditors' bill, but more than six months before the income of the Railway Company was impounded for the benefit of the mortgage bondholders by the extension of the receivership over the suit to foreclose the mortgage; that it sold its property with the understanding and expectation that the purchase price thereof would be paid out of the income of the Railway Company; and that instead of paying its claim the managing officers and directors of the Railway Company diverted the income to the payment of interest on the mortgage bonds, to the payment of other indebtedness of the company, and to payment for the construction of the railroad, all of which expenditures inured to the benefit of the bondholders. The trustee under the mortgage admitted the purchase and use of the tanks and culverts at the time stated, but denied that they were sold with the understanding or expectation that they would be paid for out of the income of the Railway Company,

and denied the alleged diversion of the income. Testimony was taken on the issues framed on these pleadings to the effect that the intervener expected payment for its goods out of the current earnings of the railroad, but no evidence was presented that there had ever been any diversion of the current earnings of the property of the Railway Company from the payment of its current expenses of operation for wages, materials, supplies, and other like necessities, to the payment of interest on the bonded debt, or to the payment of other claims of the nonpreferential class. In this state of the evidence the court below denied the claim of the intervener all preference in payment over the claims of the holders of the bonds.

The intervener contends that this ruling was erroneous, because bonds aggregating a larger amount than was authorized by the mortgage were issued thereunder, and because its claim is entitled in equity to preference in payment over the claims of the holders of the mortgage bonds. The first reason for a reversal of the ruling rests on the claim, which has been first stated in this court, that bonds to the amount of $24,538,000 were issued under the mortgage, when bonds to the amount of only $14,220,000 were authorized by it. But the mortgage authorized the issue of bonds whose aggregate amount is measured by the number of miles of railroad tracks laid by the Railway Company, the character and location of these tracks, the terminals and terminal facilities, the necessary rolling stock, equipment, repairs, improvements, etc., acquired and required by the company. No issue on this question was presented below, no trial of any such issue was had, no evidence was introduced upon it, and it is too late for the intervener to present the question of the validity of the bonds issued under the mortgage in this court now, after the court below in its decree of foreclosure rendered February 2, 1914, which has not been challenged by any appeal by the intervener, adjudged that bonds to the amount of $24,538,000 were issued under the mortgage and directed the sale of the mortgaged property for not less than $6,001,000 to pay them. Moreover, as the argument of counsel concedes that the bonds to the amount of $14,220,000 were authorized to be issued, and were issued, and as the mortgaged property was authorized to be sold, and was sold, under the decree of foreclosure for $6,001,000, it is immaterial to the claim of the intervener for a preference in payment whether the balance of the issue of bonds was valid or void, for, unless the intervener is entitled to preferential payment over the holders of the bonds to the amount of $14,220,000, it can obtain no benefit from a preference over the balance of the issue. The first ground for a reversal of the decision below is therefore untenable.

[1] Was the claim of the intervener entitled in equity to preference in payment over the claims of the bondholders secured by the prior mortgage? There is no claim or evidence that the receivers have, or that they or the Railway Company ever have had, since the purchase of the property sold by the intervener, any income of the railroad property in excess of the amounts expended by them in payment of the ordinary current expenses of the railroad for wages, materials, supplies, and other such necessities of its operation, nor

was there any evidence that any of them ever diverted any of the income from the payment of this class of preferential claims to the payments of claims not of this class. The only source, therefore, from which the claim of the intervener can be paid, is the corpus of the mortgaged property.

But a claim to payment out of the corpus of railroad property, although of the general preferential class, such as a claim for coal, or ties, or supplies, sold to the Railway Company within six months prior to the receivership and necessary for the operation of the railroad, is inferior in equity to the claims to such payment of bondholders secured by the lien of a prior mortgage. It is only in the exceptional case which arises when current income has been diverted from the payment of current expenses for wages, materials, supplies, and other necessities of operation, and, leaving such expenses unpaid, has been applied to the payment of interest on the bonds, or of claims for construction, or for unnecessary betterments, or matters of that nature, so that the payments inured to the direct benefit of the bondholders, that such a claim may be preferred to those of the holders of the bonds 'secured by the mortgage. And even then it can be preferred only to the extent of the diversion. As there was no such diversion in the case in hand, the claim of the intervener was inferior in equity to those of the bondholders. Gregg v. Metropolitan Trust Co., 197 U. S. 183, 190, 25 Sup. Ct. 415, 49 L. Ed. 717; Carbon Fuel Co. v. Chicago, C. & L. R. Co., 202 Fed. 172, 174, 120 C. C. A. 460.

[2] The expectation of the intervener that its claim would be paid out of the current earnings of the Railway Company is not sufficient to take it from the class of general claims and place it in the class of preferential claims. If such an expectation were sufficient for this purpose, liens of prior mortgages upon railroads 'would be idle, for nearly all general creditors undoubtedly expect payment out of the current incomes of the companies. Even loans of money to pay current expenses, or to keep a railroad company a going concern, in reliance upon and in expectation of payment out of the current' earnings of the railway company, are ineffectual to transfer claims for their payment, otherwise without equitable preference, to the class of preferential claims. Morgan's Co. v. Texas Central Railway, 137 U. S. 171, 196, 197, 198, 199, 11 Sup. Ct. 61, 34 L. Ed. 625; United States Trust Co. v. Western Contract Co., 81 Fed. 454, 463, 26 C. C. A. 472, 481; Contracting & Building Co. v. Continental Trust Co., 108 Fed. 1, 4, 47 C. C. A. 143, 146.

The order below was right, and it is affirmed.