LOVE et al. v. NORTH AMERICAN CO. et al.

(Circuit Court of Appeals, Eighth Circuit. December 4, 1915.)

No. 4491.

1. RECEIVERS ⬦158—CLAIMS—PRIORITY.

A state Corporation Commission prescribed _ertain railroad freight rates, and the railroad company appealed to the Supreme Court, giving a supersedeas bond conditioned for the refund to the Corporation Commission for the parties entitled thereto of all charges collected pending the appeal, in excess of those authorized by the decision of the Supreme Court. The Supreme Court on December 5, 1912, decided the appeals, and prescribed rates lower than those collected by the railroad company. Thereafter an unsecured creditor filed a bill against the railroad company, in which receivers were appointed within six months after the decision of the appeals. In May, 1914, mortgage trustees commenced proceedings for the appointment of receivers, which were consolidated with the creditor's suit. Subsequent to the collection of the excess charges, and down to the appointment of the receivers, there was in the company's treasury at all times an amount in excess of the excess charges so collected. From a time prior to the Corporation Commission's orders the gross receipts had been in excess of the actual operating expenses, and during such period there had been paid, both before and after the appointment of the receivers, amounts in excess of such charges by way of interest

on the mortgage indebtedness, and during the receivership sums largely in excess of such excess freight charges had been expended for betterments and improvements. *Held*, that the shippers' claims for the refund of such excess charges were entitled to payment as preferred claims, as against the claims of bondholders and other general creditors, and it was immaterial that the claims were not presented by the shippers, but by the Commission and by the surety on the supersedeas bond, who had paid to the Commission a part of the amount collected, as the sums collected belonged to the shippers, and it would be presumed that they were a part of the money in the company's treasury which passed to the receivers, and having been paid to the bondholders or for the betterment of the property, a court of equity would direct the restoration of such sums.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 301–306; Dec. Dig. ☞158.]

**2. RECEIVERS ☞158—CLAIMS—PRIORITY.**

Such claims were also entitled to payment as preferred claims, on the ground that the duty of the railroad company to restore its excessive exactions was a duty owing, not only to the shippers, but to the state, whose orders had been superseded, and such a public duty will be carefully safeguarded by a court of equity which has taken over the business of a public carrier by means of a receivership.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 301–306; Dec. Dig. ☞158.]

**3. RECEIVERS ☞158—CLAIMS—PRIORITY.**

Such claims were also entitled to preferential payment under the rule giving preference over bondholders secured by a prior mortgage to claims incurred for the current expenses of the ordinary operation of the mortgagor's property in the usual course of business of the mortgagor, within a limited time, usually not exceeding six months anterior to the appointment of the receiver.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 301–306; Dec. Dig. ☞158.]

**4. SUBROGATION ☞7—PAYMENTS BY SURETIES ON BOND—CLAIMS—PRIORITY.**

The rule that, when a surety company signs a bond for an independent consideration, it will not be subrogated, if subrogation will prejudice the rights of persons having independent equities, had no application, as it will not be applied as against creditors on whose behalf the bond is given, and the bondholders of the railroad company had no equity superior to that of the surety on the supersedeas bond.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. §§ 17, 18, 21–29, 58, 77, 83, 92; Dec. Dig. ☞7.]

Appeal from the District Court of the United States for the Eastern District of Missouri; Walter H. Sanborn, Judge.

Suit by the North American Company against the St. Louis & San Francisco Railroad Company, in which a receiver of the railroad company was appointed, and in which J. E. Love and others, constituting the Corporation Commission of the state of Oklahoma, and the United States Fidelity & Guaranty Company intervened. From a judgment allowing the claims of the interveners, but denying them a preference, the interveners appeal. Reversed and remanded, with instructions.

C. B. Ames, of Oklahoma City, Okl. (John M. Wood, of St. Louis, Mo., and Ames, Chambers, Lowe & Richardson, of Oklahoma City, Okl., on the brief), for appellants.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Edward T. Miller, of St. Louis, Mo. (William F. Evans, of St. Louis, Mo., on the brief), for appellees.

Nagel & Kirby, of St. Louis, Mo. (White & Case, of New York City, Charles Nagel, of St. Louis, Mo., and Roberts Walker and Perley H. Noyes, both of New York City, of counsel), for mortgage trustees.

Before CARLAND, Circuit Judge, and AMIDON and VAN VAL-KENBURGH, District Judges.

CARLAND, Circuit Judge. This is a petition in intervention filed June 14, 1914, wherein the Corporation Commission of the state of Oklahoma and the United States Fidelity & Guaranty Company pray that the sum of $88,751.86 be declared to be entitled to preferential payment as against the claims of the bondholders and other general creditors of the St. Louis & San Francisco Railroad Company, hereafter called the Frisco Company. The claims of interveners were allowed by the District Court, but denied a preference.

The facts conditioning the preferential character of the claims are as follows: On July 3, 7, and 31, 1911, and on September 14, 1911, the Corporation Commission of Oklahoma made five separate orders in cases pending before it, wherein the Frisco Company was a party, prescribing certain rates for the transportation of freight. The Frisco Company appealed from said orders to the Supreme Court of Oklahoma. The orders were superseded by the giving of a supersedeas bond in each case signed by the Frisco Company as principal and by the Fidelity & Guaranty Company as surety. The condition of the bond in each case was as follows:

"Now, therefore, if the said St. Louis & San Francisco Railroad Company shall refund to the Corporation Commission of the state of Oklahoma, for the parties entitled thereto, all charges which said company may collect or receive, pending said appeal, in excess of those fixed or authorized by the final decision of the Supreme Court of the state of Oklahoma on appeal, * * * then this obligation shall become null and void; otherwise, to remain in full force and effect."

The Supreme Court decided the appeals December 5, 1912 (35 Okl. 214, 128 Pac. 900; 35 Okl. 220, 128 Pac. 903; 35 Okl. 224, 128 Pac. 904; 35 Okl. 229, 128 Pac. 907; 35 Okl. 233, 128 Pac. 908), and the rates prescribed by the Supreme Court were made effective as of the original date of the orders appealed from. The rates prescribed by the Supreme Court were higher than the Corporation Commission rates, but lower than the regular rates prescribed and collected by the Frisco Company. It thus happened that there became due to the parties entitled thereto, namely, the shippers of freight, from the Frisco Company, $88,751.86 as excessive charges for the transportation of freight. This is the demand which the interveners ask to have allowed as a preference.

The Fidelity & Guaranty Company paid $12,124.51 of this amount to the Corporation Commission for the benefit of the parties entitled. The Fidelity & Guaranty Company on July 23, 1908, entered into a contract with the Frisco Company, whereby it agreed to sign all bonds

or instruments which the Frisco Company should desire to execute for a certain consideration specified in the contract, and it is conceded that the Frisco Company paid the surety company the sum of $580 for signing the supersedeas bonds in question.

On May 27, 1913, on a bill filed by the North American Company, an unsecured creditor of the Frisco Company, receivers were appointed for said company. On May 27, 1914, the Bankers' Trust Company and Neill A. McMillan, trustees under the general lien mortgage of the Frisco Company, commenced proceedings in which the appointment of receivers was prayed for, and this suit so commenced by the trustees was afterwards, on the 22d day of June, 1914, consolidated with the suit brought by the unsecured creditor on the 27th day of May, 1913. It thus appears that the bondholders took no proceedings to impound the revenue of the Frisco Company until May 22, 1914. The claims of the shippers arose at the time the Supreme Court of Oklahoma decided the appeals, namely, December 5, 1912, which was within six months from the date on which the receivers were appointed. Subsequent to the collection of said excess charges by the Frisco Company there was at all times in its treasury, down to the date of the appointment of the receivers, an amount of money equal to or in excess of the aggregate of the sums so collected. The gross receipts of the Frisco Company during the period from July 1, 1911, to May 27, 1913, were in excess of its actual operating expenses, and since the appointment of the receivers the gross receipts have continuously been in excess of its actual operating expenses. During the period from July 1, 1911, to May 27, 1913, the Frisco Company paid large sums in excess of the excess charges so collected by way of interest on its mortgaged indebtedness, and during the period of the receivership the receivers have expended for betterments and improvements sums in excess of $1,000,000 as well as sums in excess of said excess charges by way of interest on defendants' bonded indebtedness.

When the receivers were appointed, they received from the Frisco Company, as shown by their first bimonthly report, over $600,000 in cash. It also appears that, eliminating all items except current receipts and current expenses, the earnings and operating expenses of the Frisco Company, from May 27, 1913, to April 30, 1914 (all prior to any action by the bondholders), were as follows:

Earnings ...............................................$48,380,219.06
Operating expenses ...................................... 35,449,360.17
Leaving a balance of earnings
    over operating expenses of..............................$12,930,858.89

[1] The question now might be properly asked, to whom do the excessive charges received by the Frisco Company for the transportation of freight belong? They certainly do not belong to the general creditors of the Frisco Company, nor to the bondholders, nor the Frisco Company itself. Without question they belong to the shippers. We must not be deceived as to the true status of this claim, nor allow the bond, or the fact that the claim is presented by the Corporation Commission, to blind us to the fact that the claim is one due to the shippers for excessive charges paid by them to the Frisco Company for trans-

portation of freight. The shippers not only paid the lawful charge, but they did more. They paid an excessive charge. That payment was an illegal exaction, and, as against the railroad company, and volunteers, like the receivers, the money belonged to the shippers after the payment the same as before. It will be presumed that it was a part of the money in the treasury of the company which passed to the receivers. That money came into the hands of a court of equity. What ought such a court to have done with it? Surely it could do nothing but direct that it be returned to the shippers to whom it belonged. It having been paid to the bondholders, or for permanent betterment of the property for their benefit through the agency of a court of equity, that court, as a court of conscience, can do no less than direct its restoration.

[2] There is another aspect in which petitioners' equity appears equally strong. The railroad company got this money into its treasury by superseding rates that were fixed by authority of the state. When those rates were sustained, the carrier was bound to restore its excessive exactions. This was a duty not only to the shippers. It was a public duty owing to the state whose orders had been superseded. It is a duty which this court and the Supreme Court have always been scrupulously careful to safegard when superseding rates pending judicial inquiry as to their validity. It is a duty which a court of equity, that has taken over the business of a public carrier by means of a receivership, ought to be equally careful to enforce.

[3] Petitioners' claim also comes within the rule which underlies the right to a preferential payment. Freight rates are the lifeblood of railroad operation. It will not be contradicted that, if there were no freight rates paid in the United States, not a wheel would turn on any road. What does the law say in regard to the allowance of preferences? We accept the law as established by the Supreme Court of the United States, and by this court, as follows:

The class of claims which under the decisions of the Supreme Court may lawfully receive an equitable preference in payment out of the income or out of the corpus of the property of a mortgaged railroad over the bondholders secured by a prior mortgage is limited to claims incurred for the current expenses of the ordinary operation of the mortgaged property in the usual course of the business of the mortgagor. The test of the preferential equity of a claim is its consideration. If its consideration was a current expense of the ordinary operation of the property of the mortgagor incurred in the usual course of its business, for labor, supplies, and like things, necessary for the operation of the railroad, within a limited time, usually not exceeding six months anterior to the appointment of the receiver, the claim may be preferred in payment, otherwise it may not be. Illinois Trust & Savings Bank v. Doud, 105 Fed. 123, 124, 129, 44 C. C. A. 389, 390, 395, 52 L. R. A. 481; Rodger Ballast Car Co. v. Omaha, K. C. & E. R. Co., 154 Fed. 629, 632, 83 C. C. A. 403, 406; Blair v. R. R. Co. (C. C.) 23 Fed. 523; Whiteley v. Central Trust Co., 76 Fed. 74, 75, 77, 22 C. C. A. 67, 34 L. R. A. 303; Gay v. Hudson River Electric Power Co. (C. C.) 182 Fed. 904, 907, 909; Pennsylvania Steel Co. v. New

York City R. Co. (C. C.) 165 Fed. 485; Farmers' Loan & Trust Co. v. Northern Pacific R. R. Co. (C. C.) 68 Fed. 36, 41, 42; Fordyce v. Omaha City & E. Ry. Co. (C. C.) 145 Fed. 544, 556, 557; Chicago & A. R. Co. v. U. S. & Mex. Trust Co., 225 Fed. 940, —— C. C. A. ——; Martin Metal Mfg. Co. v. Same, 225 Fed. 961, —— C. C. A. ——.

We think that what has been heretofore said establishes that the claim of the shippers is a claim incurred "for the current expenses of the ordinary operation of the railroad in the usual course of business of the road." On principle it cannot be distinguished from payments to sureties who have signed bonds to stay the execution of judgments and claims for holders of unused tickets for refunds, and many other like charges which are habitually allowed, and have been allowed in the receivership of the Frisco Company.

[4] We are aware that, when a surety company signs a bond for an independent consideration, it will not be subrogated, when subrogation would prejudice the rights of persons having independent equities. That is not the case here. The principle stated, however, in our judgment, ought never to be applied as against the creditors on whose behalf the bond is given. The bondholders of the Frisco Company have no equity that is superior to that of the surety company.

The judgment appealed from is therefore reversed, and the cause remanded to the District Court, with instructions to allow the claim of the Fidelity & Guaranty Company, in the sum of $12,124.51, with legal interest from the date that the surety company paid the same, and also to allow the claim of the Corporation Commission, for the benefit of the people entitled thereto, in the sum of $76,627.35, with legal interest from December 5, 1912, as preferred claims, as against the claims of the bondholders and other general creditors of the Frisco road.