UNITED STATES & MEXICAN TRUST CO. et al. v. KANSAS CITY, M. & O. RY. CO. et al.

(District Court, D. Kansas, First Division. February 21, 1917.)

No. 1262.

1. RAILROADS ⬤⟶194(6)—FORECLOSURE SALE—LIABILITY OF PURCHASER—CLAIMS AGAINST RECEIVER.

A State Corporation Commission had made an order reducing certain rates, from which a railroad appealed, giving bond to repay to the shippers the excess of the old rates over the new collected pending the appeal if the order should be sustained. Shortly thereafter a receiver was appointed for the railroad, and he collected the old rates from the shippers during his operation of the road. When he took possession the amount of cash on hand was less than the amount then due for operating expenses, and there had been no net income received by the road since the appeal from the Commission's order was taken. The railroad property was sold

under a decree of foreclosure, one clause of which provided that the property should be sold free and clear of any lien to secure the payment of the outstanding receivers' certificates, which lien should be transferred to the money paid into court, but subject to a lien to secure the payment of any other indebtedness or liability incurred by the receivers in the operation of the railway properties. Another clause provided that the purchaser should hold the property as fully and completely as the defendant had theretofore held it, and should be entitled to have the premises free and discharged from all liens, claims, and charges of the defendant railway company and of all persons claiming under it. Thereafter the Commission's order was sustained, and the commission intervened in the receivership proceedings and asked to have the amounts collected in excess of the new rates repaid to it for the benefit of the shippers. *Held*, that under the terms of the decree the amount so collected by the receiver during the operation of the railroad, liability for which was conceded, should be charged against the property in the hands of the purchaser, not against the purchase money.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 651.]

2. RECEIVERS ⊕=158(1)—CLAIMS—PREFERENCES OVER BONDS—COLLECTION OF EXCESSIVE RATES.

The Commission was also entitled to a priority for the excessive amount collected by the railroads before the receiver was appointed, over the claims of the bondholders, notwithstanding the fact that there was no diversion thereof to the benefit of the bondholders, since it was a claim incurred for the operation of the railroad during the period just prior to the receivership, and therefore entitled to a preferential equity.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 301, 302.]

3. RAILROADS ⊕=194(6)—FORECLOSURE SALE—LIABILITY OF PURCHASERS.

Since the payment of the excess collected by the railroad before the appointment of the receiver was not specially provided for in the foreclosure decree and the property was not expressly burdened therewith, and since the payment thereof by the railway company prior to receivership would have decreased the cash which came into the hands of the receivers and was employed in protecting the property, the amount thereof must be paid out of the proceeds of the sale not charged against the property in the hands of the purchaser.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 651.]

In Equity. Suit by the United States & Mexican Trust Company and others against the Kansas City, Mexico & Orient Railway Company and others, in which the Corporation Commission of Oklahoma intervened. On petition by the intervener to have the amounts collected by the railroad company before and after receivership in excess of the rates fixed by the Commission repaid to it for the benefit of the shippers. Payment to Intervener ordered.

Ball & Ryland, of Kansas City, Mo., for Corporation Commission of Oklahoma.

John A. Eaton, Dudley W. Eaton, Hyden J. Eaton, Haff, Meservey, German & Michaels, and Lathrop, Morrow, Fox & Moore, all of Kansas City, Mo., for Kansas City, M. & O. R. Co.

Krauthoff, McClintock & Quant, of Kansas City, Mo., for individual bondholders.

POLLOCK, District Judge. The facts are, before receivers were appointed for the defendant railway company in this suit, the Corpora-

tion Commission of the state of Oklahoma (hereinafter called "Intervener") had established by its orders certain rates of carriage for commodities transported between points in that state by all railway companies doing business in the state, including defendant company. Defendant railway, being desirous of testing the validity of said orders in the Supreme Court of the state as by law authorizing the making of the same permitted, took and perfected an appeal from said orders of Intervener to the Supreme Court of the state, and in so doing gave supersedeas bonds executed by itself as principal and the United States Fidelity & Guaranty Company as surety, conditioned, as follows:

"Now, therefore, if the said the Kansas City, Mexico & Orient Railway Company shall refund to the Corporation Commission of the state of Oklahoma, for the parties entitled thereto, all charges which said company may collect or receive, pending said appeal, in excess of those fixed or authorized by the final decision of the Supreme Court of the state of Oklahoma on appeal, and that if pending said appeal the said the Kansas City. Mexico & Orient Railway Company shall comply with the requirements by said Commission and prescribed to be incorporated in this bond, which said requirements are attached hereto as Exhibits A and B, then this obligation shall become null and void, otherwise to remain in full force and effect."

Thereafter said orders were finally in all things adjudged and determined by the Supreme Court of the state of Oklahoma to be valid and binding on defendant railway company, by reason whereof defendant company and its surety on its said supersedeas bonds became liable to pay the difference between the rates established in the orders of Intervener and the rates charged and collected shippers of commodities by the railway company during the pendency of said appeals. Meanwhile, defendant railway company in this suit passed into hands of receivers, who continued to charge and collect the same rates of carriage theretofore charged and collected by defendant railway company until the validity of said orders of Intervener were finally adjudicated and determined in the Supreme Court of the state. The total of said excess rates of carriage so charged and collected by defendant railway company prior to the date on which its property passed into the hands of receivers appointed in this suit is the sum of $3,683.74; and the aggregate amount of such excess rates charged and collected by receivers after the property of the railway company came into their hands, and before the validity of said orders were finally determined and adjudged in the Supreme Court of the state, is the sum of $4,980.-34. The intervention in this suit is for said amounts to be paid the Intervener for the use and benefit of the shippers illegally charged and held to pay the same in contravention of valid and binding orders of Intervener.

On the hearing the United States Fidelity & Guaranty Company, not having paid as surety on the supersedeas bonds given, was dismissed from this suit.

The defenses made to the allowance of said demands and against orders for their payment are interposed by the Kansas City, Mexico & Orient Railroad Company, the purchaser of the property of defendant railway company at the foreclosure sale made in pursuance of the decree of foreclosure entered in this suit, and on behalf of the mort-

gage bondholders of defendant railway company who are not participating in the purchase of the property made under the decree of foreclosure, but who took their pro rata share of the purchase price of the property sold.

[1] In so far as the amount of the excess freight rates charged and collected by the receivers of the road is concerned, there appears to be no serious contention but that the same must be refunded at the suit of Intervener. So much seems conceded. But the contention on this branch of the case arises over who shall be held to the payment of the same. Whether said amount shall be paid out of the purchase price of the property deposited in court awaiting distribution to the bondholders, or by the purchasing company now in possession of the property. This contention, of course, arises out of and must be determined by a construction of the foreclosure decree under which the rights of those contesting are fixed and determined.

Turning now to said decree, it is seen the property sold thereunder was comprised in two lots designated as A and B. Lot A, comprising the great bulk of the property, was sold for the sum of $6,000,000. Lot B was sold for $1,000. Paragraph 18 of the decree states the "manner, terms, and conditions" on which the property was sold. So much of said paragraph as pertains to the question here presented reads, as follows:

"The said property designated as lot A shall be sold free and clear of any liens or charges to secure the payment of the outstanding receivers' certificates and receivers' notes as aforesaid, such lien or charge being transferred to the money to be paid into court to pay off and discharge said certificates and said notes and interest thereon as hereinafter provided, but subject to a lien to secure the payment of any other indebtedness, obligation or liability which shall have been duly and lawfully contracted or incurred by the receivers in the operation of the railway properties in their custody and control, and also subject to the rights and claims of the trustees of the International Construction Company of Delaware, the International Construction Company of Texas and the Union Construction Company of Delaware, as set forth or referred to in the intervening petitions of the trustees in bankruptcy of said companies on file in this case, in so far as they are prior in right of ownership or lien, or superior in equity, to the mortgage foreclosed herein. Such rights and claims of the said construction companies may be prosecuted, established, and enforced in so far as they shall finally be determined to be prior in right of ownership or lien, or superior in equity, to the lien of the mortgage herein foreclosed on the said railway property to be hereunder sold, in the hands of the purchaser thereof at said sale or his successor or assigns."

Again, paragraph 22 of the decree, in providing the form, condition, and legal effect to be given the special master's deed, among other matters, provides as follows:

"The purchaser or purchasers, or his or their successors or assigns, shall, after the delivery of the premises and property purchased, hold, enjoy and possess the same and an absolute indefeasible title thereto, together with all the rights, privileges, immunities and franchises thereto appertaining, as fully and completely as the defendant railway company has heretofore held, owned or enjoyed, or now holds, owns and enjoys the same; and the purchaser or purchasers, or his or their successors or assigns, shall thereupon be entitled to have and to hold the said premises and property so purchased and conveyed free and discharged from all the liens, claims and charges of the defendant railway company, and of all persons claiming under it, except as in this decree expressly reserved."

However, as paragraph 18 above quoted expressly charged the property purchased under the decree with the lien of and with payment of all indebtedness, obligations and liabilities lawfully contracted or incurred by the receivers in the operation of the property save such demands only as are excepted therefrom, it follows the purchaser took the property purchased under the decree burdened with the payment of the excess freight charges received by the receivers in the operation of the property from shippers represented by Intervener, and that said amount is not payable out of the purchase price, for such is the terms and intent of the decree.

As to the demand of Intervener for the amount of excess freight charges coming into the hands of the railway company before receivership, the purchasing company and the nondepositing bondholders make two contentions: First, jointly against Intervener, that said amount is not superior in equity to the rights of the mortgage bondholders, and hence is payable to Intervener neither out of any part of the purchase money now in the hands of the court, nor should it be required to be paid by the purchaser as any part of the burden on it imposed by the decree; second, as between themselves the contention is, if said demand is entitled to priority in payment over and above the bonded debt which the property was primarily sold to satisfy, whether the purchaser shall be held to payment of the same under the terms of the decree of foreclosure or whether it shall in equity be paid out of the purchase price.

[2] Coming now to a consideration of the first contention, it is to be noted there was in this case no diversion of income of any kind or nature whatever by defendant railway company prior to receivership, and this for the all-sufficient reason there was no net income received over and above the expenses of operation; hence no claim to priority of payment based on any such ground is tenable in this case. And had the surety company making the supersedeas bond with defendant railway company been compelled to pay the claim presented by Intervener, it would not have been entitled to a decree for preferential payment (Martin Metal Mfg. Co. v. United States & Mex. Trust Co., 225 Fed. 961, 141 C. C. A. 85; United States Fidelity & Guaranty Co. v. United States and Mex. Trust Co., 234 Fed. 238, —— C. C. A. ——), unless such right to preferential payment inheres in the very nature of the claim itself presented in this suit. That the right to preferential payment does inhere in the nature of the demand presented by Intervener is the principal contention presented in its support. The case relied upon to justify this contention is that of Love v. North American Co., 229 Fed. 103, 143 C. C. A. 379, which arises out of what is commonly called the Frisco receivership and involved freight charges arising out of the precise orders of Intervener as those above stated in this case. However, as against the conclusiveness of the above decision on the facts here presented, it is urged, as shown by the opinion in the Frisco case, there came into the hands of the receivers on their appointment and qualification more than $600,000 in cash, and that company earned the year prior to receivership about $13,000,000, of which the excess rates there in dispute formed a part, whereas, in

this case, as has been stated, there were no net earnings of the railway company over and above operating expenses, even including the excess-freight rates charged and collected which are involved in this suit. Further, there came into the hands of the receivers in this matter on their appointment and qualification only the sum of $12,300.21, all of which sum was then due for operating expenses unpaid. Such differences in point of fact would afford ample ground to distinguish the Frisco controversy from that here presented, were it not a reading of the opinion in the Frisco Case, 229 Fed. 103, 143 C. C. A. 379, discloses, while preferential payment was in that case decreed on the above-stated facts, among other things, which differentiates it from this case, yet the opinion in the Frisco Case goes much further, as the following language clearly shows:

"(2) There is another aspect in which petitioners' equity appears equally strong. The railroad company got this money into its treasury by superseding rates that were fixed by authority of the state. When those rates were sustained, the carrier was bound to restore its excessive exactions. This was a duty not only to the shippers. It was a public duty owing to the state whose orders had been superseded. It is a duty which this court and the Supreme Court have always been scrupulously careful to safeguard when superseding rates pending judicial inquiry as to their validity. It is a duty which a court of equity, that has taken over the business of the public carrier by means of a receivership, ought to be equally careful to enforce.

"(3) Petitioners' claim also comes within the rule which underlies the right to a preferential payment. Freight rates are the lifeblood of a railroad operation. It will not be contradicted that, if there were no freight rates paid in the United States, not a wheel would turn on any road. What does the law say in regard to the allowance of preferences? We accept the law as established by the Supreme Court of the United States, and by this court, as follows: The class of claims which under the decisions of the Supreme Court may lawfully receive an equitable preference in payment out of the income or out of the corpus of the property of a mortgaged railroad over the bondholders secured by a prior mortgage is limited to claims incurred for the current expenses of the ordinary operation of the mortgaged property in the usual course of the business of the mortgagor. The test of the preferential equity of a claim is its consideration. If its consideration was a current expense of the ordinary operation of the property of the mortgagor incurred in the usual course of its business, for labor, supplies, and like things, necessary for the operation of the railroad, within a limited time, usually not exceeding six months anterior to the appointment of the receiver, the claim may be preferred in payment, otherwise it may not be. Illinois Trust & Savings Bank v. Doud, 105 Fed. 123, 124, 129, 44 C. C. A. 389, 390, 395, 52 L. R. A. 481; Rodger Ballast Car Co. v. Omaha, K. C. & E. R. Co., 154 Fed. 629, 632, 83 C. C. A. 403, 406; Blair v. R. R. Co. (C. C.) 23 Fed. 523; Whiteley v. Central Trust Co., 76 Fed. 74, 75, 77, 22 C. C. A. 67, 34 L. R. A. 303; Gay v. Hudson River Electric Power Co. (C. C.) 182 Fed. 904, 907, 909; Penn. Steel Co. v. New York City R. Co. (C. C.) 165 Fed. 485; Farmers' Loan & Trust Co. v. Northern P. R. R. Co. (C. C.) 68 Fed. 36, 41, 42; Fordyce v. Omaha City & E. Ry. Co. (C. C.) 145 Fed. 544, 556, 557; Chicago & A. R. Co. v. U. S. & Mex. Trust Co., 225 Fed. 940 [141 C. C. A. 64]; Martin Metal Mfg. Co. v. Same, 225 Fed. 961 [141 C. C. A. 85].

"We think that what has been heretofore said establishes that the claim of the shippers is a claim incurred 'for the current expenses of the ordinary operation of the railroad in the usual course of business of the road.' On principal it cannot be distinguished from payments to sureties who have signed bonds to stay the execution of judgments and claims for holders of unused tickets for refunds, and many other like charges which are habitually allowed, and have been allowed in the receivership of the Frisco Company.

"We are aware that, when a surety company signs a bond for an independ-

ent consideration, it will not be subrogated, when subrogation would prejudice the rights of persons having independent equities. That is not the case here. The principle stated, however, in our judgment, ought never to be applied as against the creditors on whose behalf the bond is given. The bondholders of the Frisco Company have no equity that is superior to that of the surety company.

"The judgment appealed from is therefore reversed, and the cause remanded to the district court, with instructions to allow the claim of the Fidelity & Guaranty Company in the sum of $12,124.51, with legal interest from the date that the surety company paid the same, and also to allow the claim of the Corporation Commission, for the benefit of the people entitled thereto, in the sum of $76,627.35, with legal interest from December 5, 1912, as preferred claims, as against the claims of the bondholders and other general creditors of the Frisco Road."

In view of the foregoing language appearing in the opinion in the Frisco Case, which is controlling here, and giving to it the weight of additional reasons why the claims there presented should be allowed as preferential, there appears in this case no sufficient reason why Intervener shall not be allowed to recover the amount of excess freight charges which came into the hands of defendant railway company prior to receivership.

[3] The only remaining question is, Out of what fund, or by what person, under the terms of the decree of foreclosure, shall payment of this demand be made? As the payment of demands of this character was not specially provided for in the foreclosure decree, and as the property is not expressly so burdened with the payment of the same, and as the payment of said demand by the railway company prior to receivership would have decreased the cash which came into the hands of the receivers on their appointment and qualification, and was by them employed in protecting the property, and as the holding of the court in the Frisco Case, as seen, is that such a demand from its very nature requires its preferential payment out of the corpus of the property itself, I am of the opinion this portion of the demand of Intervener must be paid out of the fund now in the hands of the court awaiting distribution.

It is so ordered.