REYBURN *v.* CONSUMERS' GAS, FUEL & LIGHT Co. and others.

*(Circuit Court, N. D. Illinois.* January 4, 1887.)

CORPORATIONS—RECEIVER—MORTGAGE SALE—"OPERATING AND SUPPLY MATERIALS" CONSTRUED.

A receiver was appointed to wind up a corporation engaged in the manufacture and supply of gas. By the order appointing him he was directed to keep the works in operation, to make necessary repairs, and to pay and discharge the debts of employes, and bills for supplies and operating materials contracted within sixty days prior to his appointment. Pursuant to the orders of the court, he made improvements and extensions on the gas-works of the company, part of which was paid by money raised on receiver's certificates, and part out of the earnings of the company Default having been made in the payment of interest on bonds secured by mortgage given prior to his appointment, the trustee in the mortgage intervened, and a decree of foreclosure was entered on a cross-bill filed by him. The property was sold, and the proceeds paid into court for distribution. *Held,* that meters supplied to the company were not operating or supply materials, but of the nature of materials used in the construction of the works; and, being supplied more than 60 days prior to the appointment of the receiver, the creditors supplying them were not entitled to be paid out of the fund in court. in preference to the bondholders, on the ground that, the receiver having, under orders of the court, applied part of the income of the company to the improvement and extension of the works of the company, the claim for the meters should be paid out of the proceeds of the *res.*

In Equity. Bill to wind up a corporation.

*Grant & Brady* and *Mr. Petit,* for Goodwin Gas Stove & Meter Co.

*Leaming & Thompson*, for Dearborn Foundry Co.
*F. J. Loesch*, for Pennsylvania Tube-works.
*Mr. Post* and *R. B. Bacon*, for Sheckel, Harrison & Howard.
*Peckham & Brown*, for First Nat. Bank of Chicago.
*Osborn & Lynde*, for the bondholders.

BLODGETT, J. · The original bill in this case was filed June 30, 1885, and on July 30, 1885, a supplemental bill was filed charging that the defendant corporation, the Consumers' Gas, Fuel & Light Company, was insolvent, and unable to pay its debts, and asked that the company be wound up, its property sold and distributed among its creditors pursuant to the provisions of the statutes of Illinois in such case made and provided, and asking for the appointment of a receiver to take possession of the property of the corporation, and, under the orders of the court, sell and dispose of the same, and distribute the proceeds to the creditors of the company as required by law. An interlocutory decree was entered, on the filing of this supplemental bill, appointing a receiver, and directing him to take possession of all and singular the assets of the company, and the supplies and material on hand, to keep the works in operation, to make necessary repairs, and to pay and discharge the debts of employes, and for supplies and operating material, contracted within 60 days prior to his appointment. Under this decree the receiver took possession and operated the works of the company, and, pursuant to the orders of the court, made improvements and extensions of the gas-works of the company, part of which has been paid by money raised on receiver's certificates, and part out of the earnings of the company.

Prior to the appointment of a receiver the company had given a mortgage to secure an issue of $4,000,000 of bonds, of which $2,000,000 had been issued and put in circulation, and were in the hands of *bona fide* holders at the time the receiver was appointed. The mortgage covered all the works, franchises, personal property, and rents, issues, and profits of the property, to secure the payment of the bonds so issued; the bonds bearing interest at the rate of 6 per cent. per annum, payable semi-annually on the first day of April and October of each year. Default was made in the payment of the interest due October 1, 1885, and on March 6, 1886, the trustee in the mortgage intervened in the case, and, by leave of court, filed a cross-bill, praying a foreclosure of the mortgage; and under this cross-bill a decree of foreclosure was entered, the property sold, and the proceeds paid into court for distribution. Parties having claims against this fund in court were duly notified to present them, and make proof thereof before the master, to whom the case had been referred. Among the claims so presented were the following:

| | | |
|---|---|---:|
| Goodwin Gas Stove & Meter Company of Philadelphia, | - | $5,715 39 |
| Sheckel, Harrison & Howard, | - - - - | 1,032 74 |
| Dearborn Foundry Company, - | - - - - | 3,393 69 |
| First National Bank of Chicago, | - - - - | 1,416 50 |
| Pennsylvania Tube-works, | - - - - | 794 87 |
| | | |
| Making a total of - | - - - - | $12,353 19 |

The proofs presented before the master by these creditors have been returned by him into court; and the question made upon these proofs is whether these claims, or any part of them, are properly chargeable against the proceeds of the property now in court, either as equitable liens upon the property itself, or by reason of any diversion of the earnings of the property while in the hands of the receiver. The proof shows, without contradiction, that the course of business of the company was to pay its employes every month, and supplies bought on credit during the month were paid for on the first of the succeeding month, so that all debts for labor and operating supplies fell due within 30 days from the time they were contracted.

Of the claim of the Goodwin Gas Stove & Meter Company, $3,000 was contracted between March and December, 1884, and the remainder was contracted between February and March, 1885; so that all of this claim was contracted more than 60 days before the appointment of the receiver, and the proof shows that this indebtedness is wholly for gas-meters furnished to the defendant company. It is contended by this creditor that its claim is for supplies furnished the defendant, and that as the proof shows that the receiver, under the orders of the court, applied enough of the income of the company to the improvement and extension of the works and plant of the company, therefore this debt should be paid out of the proceeds of the *res;* thus replacing for the benefit of supply creditors that which was diverted, for the time being, from them to the benefit of the mortgaged property.

I do not concur with the learned counsel who appeared for this creditor in their position that the goods furnished come under the definition of "operating supplies." The debt was wholly contracted for gas-meters, which were a part of the gas-works of the company, and as much required for the complete and operative construction of the works as any other part of the plant or machinery of the works. It is impossible, as the proof shows, for the gas company to sell gas without meters, with which to measure and distribute it to their customers, and from which the accounts are to be made up and the bills collected. It seems to me that it requires meters to make the works of a gas company complete, as much as pipes and generators, and no gas-works can be said to be in operating condition unless they have an adequate supply of meters. The claim, therefore, comes within the definition of a claim for material furnished for the construction of the works; and from the decision of the supreme court of the United States in *Fosdick* v. *Schall*, 99 U. S. 235, down to the present time, I have seen no case which contemplates, except under very peculiar circumstances, that general creditors who have furnished mere material for the construction of works of this character are to have a lien, as against the lien of mortgagees. The doctrine of *Fosdick* v. *Schall*, and the subsequent cases on the same question, is that, for the purpose of keeping works of a public character, within which the works of this company may be properly included in operation, those who have given the company credit for the supplies necessary to keep the works in operation—current operating supplies—are to have a lien extending back not to exceed six

months, except under extraordinary circumstances; but I do not understand that this rule has ever been applied to cases of creditors who have simply furnished material for the construction of the works, in contradistinction to operating material. The material for the building or construction of the works, in theory, at least, is supposed to be paid for out of the capital stock, or bonds secured by the mortgage upon the property. It is from this source that companies of this character raise the money with which to construct their works, and they depend upon the earnings or income after the works are constructed to pay for their operating labor and supplies, and pay interest upon their bonds, and dividends to their shareholders. And, recognizing the necessity to the public that enterprises of this kind, exercising franchises of a public character, shall be kept, in the language of the cases, "going concerns," the courts have favored creditors who have furnished labor and supplies to the extent of allowing them an equitable lien, extending, as a rule, not further back than six months, but recognizing, however, the principle that the extent to which credit for this class of supplies is to run back is to be measured by the usual course of credit and business of the company in the conduct of its affairs; that is, ascertaining from the proof what was the usual term of credit upon which these companies have purchased their supplies, or settled, as in the case of railroads, with their connecting lines, this term of credit has been taken as a measure by which to determine the time within which this class of claims shall be protected.

This claim for meters did not originate in a claim for operating supplies, but in a claim for material furnished for the construction of the works,—the outfit by which the gas company was able to enter upon and do business.

But it is further urged in reference to this claim that the receiver in this case was appointed for the benefit of the general creditors, and therefore, by appointing a receiver, the court has appropriated, so to speak, the net earnings of the company beyond its operating expenses to the general creditors, of which this creditor is one; and therefore, inasmuch as the reports of the receiver show that some of the net earnings have been expended by the receiver in permanent improvements on the property itself, thereby benefiting the mortgagees, therefore these creditors have the right to ask the court to take from the proceeds of the property a sufficient amount to pay their claims, thereby adjusting the accounts between the parties, and repaying to the account of general creditors that which has been diverted to the improvement account. The fallacy of this argument consists in the assumption that the receiver was appointed solely for the benefit of the general creditors. The original bill in the case was in form and substance a creditors' bill, filed by Reyburn as a judgment creditor; but the supplemental bill under which the receiver was appointed was a bill for winding up the affairs of the corporation under the provisions of the Illinois Statutes, and the receiver was appointed as much for the benefit of the lien creditors as the general creditors. In fact, it may be said that he was appointed for the benefit of the creditors in the order of their priority; because the prayer of the bill,

and the general scope of the proceeding, indicate that the purpose of the complainant, and the purpose of the court in making the interlocutory decree appointing the receiver, was a sale of the property, and a distribution of the proceeds among the creditors in the order of their priority.

The counsel for this creditor has also overlooked the fact that the mortgage, in express terms, conveyed to the trustee for the security of the bonds, not only the works, franchises, and real estate of the corporation, but all its personal property, including, of course, its operating material, implements, tools on hand, and the rents, issues, and profits of such property. From the time that the receiver took possession of this property he was, as it seems to me, as much a receiver of the bondholders as he was of the general creditors, and the court, in the exercise of its discretion, should give such direction to the expenditure of the earnings of the works during the time of the receivership as the equities of the respective parties require. The income having been pledged to secure the payment of the bonds, the court might, under its equitable powers, have directed the receiver to pay the net income to the bondholders, as having a vested first lien upon it, or, with the consent or acquiescence of the bondholders or their trustee, such income could be applied to the improvement of the property. In other words, the vested lien of holders of the bonds of the company was superior to that of any general creditor, and, if the court diverted the earnings from the creditors secured under the mortgage, no one but such secured creditor can complain. This creditor having no vested lien against this property, and having no equitable lien under the decision of the court, I can see no ground upon which the proceeds of the property can now be taken from the bondholders to whom they belong, and applied to the payment of this debt. The mere fact that, during the administration of the receiver, the court saw fit to allow the net earnings, or a portion of them, to be applied to the extension and improvement of the property, does not create an equitable lien upon the fund now in court in favor of this creditor, who never had any lien either upon the property itself, or any fund in court.

The proof also shows that the claims of Sheckel, Harrison & Howard, the Pennsylvania Tube-works, the Dearborn Foundry Company, and the First National Bank of Chicago, are all for construction material furnished to the company more than 60 days prior to the appointment of the receiver, and what I have said in regard to the claim of the Goodwin Gas Stove & Meter Company applies with equal force to the other claims which were disallowed by the receiver. As already stated, the proof shows the usual term of credit of this company for supplies was only 30 days; but, as a matter of precaution, the court allowed the receiver to pay any indebtedness of the company for supplies and labor contracted within 60 days from the day the receiver was appointed. It seems to me, from the facts of the case, that is as far back as the court should extend the lien of the supply and labor claim upon the proceeds of the *corpus*, and under that rule these intervenors would none of them be entitled to payment; but the more conclusive and satisfactory reason to

my mind why these claims should not be allowed is that none of them are operating and supply claims. They are all for construction material, such as meters, pipes, and other material, which was used in the construction of the works, and not in their operation after they are constructed.

All these claims are therefore disallowed.