### GENERAL ELECTRIC CO. v. RICHARDSON et al.

(District Court, E. D. Pennsylvania. January 27, 1916.)

No. 1387.

1. SALES ⊚⟹474—CONDITIONAL SALES—BUILDING CONTRACTS—RIGHTS OF SUBCONTRACTORS.

Plaintiff supplied certain electrical apparatus to general contractors working on a construction contract, reserving title thereto. Payment was not made, the general contractors became insolvent, and the contract was completed by their receivers. Sufficient money was due from the owner to pay for the apparatus, and plaintiff sued to require payment thereof to it, on the theory that an equitable lien or trust was impressed thereon in its favor. The owner had made substantial payments to the

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

general contractors, on architects' estimates of the total work done, without notice of any equities of plaintiff, and the receivers had completed the contract at considerable expense on the faith of the situation as it appeared to be. It was admitted that under the law of Pennsylvania conditional sales were void as against bona fide purchasers and execution creditors, and that the receivers had the standing of creditors. *Held*, that plaintiff had neither a legal right nor an equity to the balance due; it being a principle of the common law that a transfer of chattels under circumstances implying a sale passes title clear of secret liens and unaffected by any secret verbal retention of title, except as against those who are in the secret.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1391–1402; Dec Dig. ☞474.]

2. COURTS ☞367—UNITED STATES COURTS—STATE LAWS AS RULES OF DECISION.

The contract being a Pennsylvania contract, the law of that state was a rule of property, to be applied as such in the courts of the United States in any controversy over the right of property, whether the right was invoked in an action at law or in proceedings in equity.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. ☞367.]

In Equity. Suit by the General Electric Company against James A. Richardson and others. On trial hearing upon bill, answer, and proofs. Bill dismissed.

Gill & Linn, of Philadelphia, Pa., for plaintiff.

Samuel L. Howell, of Philadelphia, Pa., for defendant T. W. Evans Museum & Institute Society.

Ira J. Williams and Reynolds D. Brown, both of Philadelphia, Pa., for defendant receivers.

DICKINSON, District Judge. [1] The facts necessary to a presentation of the question involved in this case are few. James G. Doak & Co. had a construction contract with the Thomas Evans Museum & Institute Society. They were what is commonly called the general contractors. The plaintiff supplied to the general contractors, toward the construction, certain electrical apparatus. The only respect in which the transaction differed from the ordinary one between a general contractor and a materialman or subcontractor is that there were provisions in the contract of the plaintiff expressive of the thought that the plaintiff retained title to the apparatus until payment therefor was made. Payment was not made, and the general contractors became insolvent. The contract was completed by the receivers. Enough money is due by the owner to pay the plaintiff for the apparatus supplied, and this bill has been filed to require that this be done. The prayers are for an injunction restraining the owner from paying the receivers, and requiring them to pay the plaintiff the agreed value of what it supplied. It would, at first view, be thought to be not a little difficult to formulate a statement of any theory upon which such a bill can be sustained. The very able counsel for plaintiff has, however, evolved such a theory. It is, in the language of counsel:

"That an equitable lien or trust was impressed upon the unpaid balance of the contract price for the building in favor of the plaintiff for the amount due it."

The acceptance of this proposition encounters these obstacles: There were no contractual relations between the Museum and the plaintiff. If the apparatus remained the property of the latter, the utmost right it would seem to have had was to retake what belonged to it. They surely could not have arranged between themselves that the Museum might retain the property, and the other defendants pay for it, and have enforced such payment by the others. If both could not have done this, upon what equity can the court found a decree to do the same thing at the request of the plaintiff alone? It is clear that, if the owner of the building had given up this property to the plaintiff, its only hope of recoupment would have been through calling upon the other defendants to supply the generators in fulfillment of the contract. It is equally clear that the owner could not have required this if its relinquishment of the property had been voluntary. This would bring the right to the touchstone of the question of whether the Museum could have kept the apparatus.

Stated in the abstract, the question would then be: Can a subcontractor or materialman, who has furnished material to a general contractor, and which has gone into the construction of the building of another, reclaim the material, if not paid for? As applied to this case, the question would have involved the fact that the material had been furnished for this building, and had been delivered by the materialman to the building in furtherance of the contract, and the owner had made very substantial payments to the general contractor without notice of any equities in the materialman. When the other defendants were brought into the discussion of the equities, the further fact is developed that they, after the default of the general contractor, completed the building at considerable expense on the faith of the situation as it appeared to be. When the title of the plaintiff is inquired into, it is found to have no other basis than a secret agreement between itself and the general contractor that the apparatus should be considered the plaintiff's property, after it had been sold to the contractor, unless or until it was paid for. None of the facts give any strength to the case of the plaintiff. A more or less fanciful theory may be built upon nicely balanced equities between the plaintiff and the owner, but the structure will not withstand the shock of contact with the rugged principles of the common law.

Counsel for plaintiff has supported his theory of plaintiff's case by an argument which is both ingenious and plausible. It is easier to deny his conclusions than to controvert his argument. The thread which will guide us out of the labyrinth into which such arguments lead is to hold fast to one simple principle of the common law. That principle is that a transfer of chattels under circumstances which imply a sale passes the title clear of secret liens and unaffected by any secret verbal retention of title, except as against those who are in the secret. Mere verbal pledges or transfers of title are by the statute of Elizabeth void against subsequent bona fide purchasers for value and creditors. The latter, counsel for plaintiff admits, includes these receivers defendant. The literature of the law supplies much aid for arguments in support of such liens, but such aid will, upon examina-

tion, be found to have its source in the principles of other systems of law than those from which the law of Pennsylvania is derived. It is admitted that under the law of Pennsylvania conditional sales are void so far as they affect rights of bona fide purchasers and execution creditors. Property sold to a vendee under a conditional sale agreement in the effort to secure payment of the purchase money is subject to execution if in possession of the vendee. Duplex v. Clipper, 213 Pa. 207, 62 Atl. 841.

[2] The contract here was a Pennsylvania contract. The law of Pennsylvania, therefore, becomes the law of the property, and as such will be applied in the courts of the United States in any controversy over the right of property whether the right is invoked in an action at law or in proceedings in equity. If this transaction be viewed as a sale to Doak & Co., it is conceded that under the law of Pennsylvania plaintiff's title cannot be asserted against the receivers. Although plaintiff does not in terms admit it, the argument also concedes that title could not be asserted against the owner. The apparatus was furnished to the contractor to be used in the construction of the building and was there delivered and so used. On the faith of this having been done and of the value thus received, the owner paid out many thousands of dollars. The fact that other construction work was also done does not take away the fact that this large payment was made in consideration of this apparatus having been furnished, as well as the other constructive work done; nor does it, or the other fact that the payment was made on an architect's estimate of the total work done, detract from the rights or lessen the equities of the owner. Surely no creditor of Doak & Co. could have sold the apparatus, nor could the plaintiff have taken it away from the owner. These considerations have forced the plaintiff into taking the alternative position of no sale to the contractor and of a delivery to the owner through the contractor as agent for plaintiff.

This view adds nothing to plaintiff's equities. The transaction then was this. The plaintiff gave Doak & Co. not merely authority, but express directions, to set up the apparatus on the owner's premises, and on the strength of this (and of other construction work done by Doak & Co.) to demand and receive a large sum of money from the owner without notice of any kind of plaintiff's title. The mere statement of the transaction denies the existence of any equities arising out of it. Nor is the plaintiff helped by taking from Doak & Co. their indefinite agreement to protect plaintiff in the assertion of its title. The only thing Doak could have done would have been to do what plaintiff might itself have done—give notice of this title. The fact that it did not give this notice is proof that it did not wish or expect it to be given by Doak.

Small comfort is to be had from Holly v. New Chester Water Co. (C. C.) 48 Fed. 879, or York v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782. The former case is ruled upon the express ground that the contractor and the owner were there one. The case was therefore decided as if between the plaintiff and the contractor with whom it had agreed. The latter case arose before the amendment to

the Bankruptcy Law, and was because of this, in legal effect, also between the parties to the contract.

The case for the plaintiff may be summed up in this statement: The only legal right and the only equity it has is to have Doak & Co. live up to their contractual obligations. The owner of the property and the other creditors have the like right. The plaintiff has no legal right and no equity which it can assert against either the owner or the creditors. Its claim of right to assert such an equity against the creditors represented by the receiver by reaching them through the owner rests upon an argument which, although ingeniously constructed and urged with force and plausibility, fails in convincing power. The owner has no equity against the receivers. As already stated, the plaintiff has none against either owner or receivers. None is created by the simple expedient of proceeding against both. The law of Pennsylvania, by which the rights of these parties is to be determined, is admitted to be as stated. Nothing is gained by attacking the policy of the common law upon which it is founded. That policy might, however, easily be vindicated. It is a distinguishing feature of the common-law system. It is in substance that, when a sale takes place, other persons who deal with the property on the faith of the sale as made shall not be embarrassed by the parties to the sale secretly saying to each other that the sale is not a sale.

The bill of complaint is dismissed, with costs to defendants.