CRANE CO. v. FIDELITY TRUST CO. et al. *

(Circuit Court of Appeals, Ninth Circuit. December 4, 1916.)

No. 2768

1. RECEIVERS ⊚═▷158(2)—PAYMENT OF CLAIMS—PRIORITY OF UNSECURED DEBTS TO PRE-EXISTING LIENS.

It is the exception and not the rule that prior recorded liens may be displaced by general and unsecured claims, and while circumstances may exist which make it practically necessary to ·the business of a public service corporation and the preservation of its property that pre-existing debts of certain classes should be paid by its receiver out of the earnings of the receivership, or even out of the corpus of the property, the discretion to make such payments should be exercised with very great care. In general, only claims which were a part of the general current expenses of the ordinary operation of the mortgaged property in the usual course of business of the mortgagor, as distinguished from those for permanent additions or improvements, should be given such preference, and this rule should not be disregarded, except as a. matter of business policy, where such preferential payment is necessary to keep the corporation a going concern in the hands of the receiver, or to prevent a loss at least equal to the amount of the payment.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 303; Dec. Dig. ⊚═▷158(2).]

2. RECEIVERS ⊚═▷158(2)—PAYMENT OF CLAIMS—PRIORITY OF UNSECURED DEBTS TO PRE-EXISTING LIENS—"CONSTRUCTION ITEMS"—"RECONSTRUCTION"—"REPAIRS."

Claims against a public service corporation arising within a limited time before a receivership, which may be given preference over a prior mortgage as for current operating expenses, do not include those for service extensions of a water, gas, or electric light system, which are not to be considered as "repairs," but rather as "construction items," nor for additional equipment or replacement of worn-out equipment, which should be classified as "reconstruction."

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 303; Dec. Dig. ⊚═▷158(2).

For other definitions, see Words and Phrases, First and Second Series, Reconstruction; Repairs.]

3. RECEIVERS ⊚═▷159—PAYMENT OF CLAIMS—PRIORITY OF UNSECURED DEBTS TO PRE-EXISTING LIENS—DIVERSION OF INCOME.

· The ·payment of interest to bondholders of a corporation, who are entitled to such payment in priority to claims of supply creditors, is·not a diversion of income.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 307, 308; Dec. Dig. ⊚═▷159.]

Gilbert, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Suit in equity by the Fidelity Trust Company, trustee, against the Washington-Oregon Corporation, Willis D. Hoag, its receiver, and others, in which the Crane Company intervened. From a decree denying it priority, the Crane Company appeals. Affirmed.

See, also, 217 Fed. 588.

⊚═▷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied February 13, 1917.

Maurice W. Seitz, of Portland, Or., for appellant.

Randolph W. Childs, of Philadelphia, Pa. (Maurice A. Langhorne, Frederic D. Metzger, and E. M. Hayden, all of Tacoma, Wash., of counsel), for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. The Crane Company, appellant, from time to time between January 1, 1911, and May 31, 1914, sold certain water pipes, fittings, and gas and water equipment to the Washington-Oregon Corporation engaged in the operation of electric railway systems and light and water systems in Washington and Oregon. In May, 1911, the Washington-Oregon Corporation made a mortgage and deed of trust to Fidelity Trust Company, as trustee, to secure a bond issue of Washington-Oregon Corporation for $5,000,000, the bonds to bear 6 per cent. interest, interest maturing on the 1st of April and the 1st of November in each year; the mortgage constituting a lien upon all property of every nature and description then owned by Washington-Oregon Corporation and thereafter acquired by it, and upon the rents, issues, and profits of all of such property. The mortgage was duly recorded. Interest was paid upon the bonds issued under the mortgage up to November 1, 1913, but the defendant corporation defaulted in the interest due on April 1, 1914. Foreclosure proceeding was instituted, a receiver was appointed, and the possession of the property passed to the receiver on July 31, 1914. The Crane Company intervened in the foreclosure proceedings, and asked that its claim for $11,-146.67 be declared prior to the mortgage debt, and that the claim be paid out of the proceeds of the mortgage property, or out of the income of the receivership. The receiver and the complainant answered intervener's petition, and the cause was submitted upon a stipulated statement of facts.

In the stipulation it was agreed that on June 1, 1914, a balance was struck between Crane Company and Washington-Oregon Corporation, and that the Oregon-Washington Corporation was found to owe the Crane Company $13,225.25; that to evidence this debt the Washington-Oregon Corporation made six promissory notes, payable at different times, to the order of Crane Company; that one of the notes was thereafter paid on June 7, 1914; that the merchandise which was furnished by the Crane Company and unpaid for consisted of material furnished for public service corporations at different places in Oregon and Washington; that the materials furnished by the Crane Company, and the credits extended, to the Washington-Oregon Corporation, were in reliance on the part of the Crane Company that the same would be paid out of the current earnings of the Washington-Oregon Corporation, and that the current income would be applied to the payment for such materials, and that to that end the Crane Company permitted the account to continue as a running account and to accept payments from time to time as the Washington-Oregon Corporation declared its ability to make such payments; that the interest was paid on outstanding bonds covered by the mortgage sought to be foreclosed for the two years immediately prior to the receivership; that during the period

within which Crane Company's claim accrued, and thereafter, there were actual operating net earnings in excess of the interest of the Washington-Oregon Corporation due and paid by the Washington-Oregon Corporation during said period, on the first consolidated mortgage bonds covered by the foreclosure suit, and in excess of the Crane Company's claim.

The District Court denied all preferences, except for material furnished within six months prior to the appointment of the receiver, and decreed that there was no equity in the claim of intervener for preferential payment over the claims of the mortgage bondholders, save to the extent of $56.03. The Crane Company appeals from the decree.

The claims of the Crane Company may be classified as follows: (1) Service extensions, such as gas equipment for service connections, and water equipment for service connections; (2) main extensions, for water main extensions to different places; (3) betterments, such as hydrant systems, wood gates, and water valves; (4) reconstruction, water mains and pipes to replace certain old mains; (5) repairs, miscellaneous items in the way of water equipment.

[1] In Moore et al. v. Donahoo et al., 217 Fed. 177, 133 C. C. A. 171, this court recently considered the question whether claims for current supplies which are necessary to the maintenance of the property of a public service corporation to keep it in operation should be paid out of the current income in preference to the bonds upon the assumption that the lien of the mortgage attaches only to the residue of the income remaining after the payment of the operating expenses, or should such claims displace the vested lien of the mortgage upon the body of the estate because the claimants by their labor and supplies have rendered necessary assistance in continuing the operation of the property, thus enabling the debtor to discharge its obligations to the public.

The question was regarded as conclusively determined by the Supreme Court in Gregg v. Metropolitan Trust Co., 197 U. S. 183, 25 Sup. Ct. 415, 49 L. Ed. 717. Inasmuch as the facts of the Gregg Case are stated in the opinion of the court in Moore v. Donahoo, we need not repeat them. But as specially pertinent we quote the following language from Gregg v. Metropolitan Trust Co., supra:

"There are no special circumstances affecting the claim as a whole, and if it is charged on the corpus it can be only by laying down a general rule that such claims for supplies are entitled to precedence over a lien expressly created by a mortgage recorded before the contracts for supplies were made. An impression that such a general rule was to be deduced from the decisions of this court led to an evidently unwilling application of it in New England R. Co. v. Carnegie Steel Co., 75 Fed. 54, 58 [21 C. C. A. 219], and perhaps in other cases. But we are of opinion, for reasons that need no further statement (Kneeland v. American Loan & Trust Co., 136 U. S. 89, 97 [11 Sup. Ct. 426, 34 L. Ed. 1052]), that the general rule is the other way, and has been recognized as being the other way by this court."

It is well recognized that there may be exceptional cases arise where preferences should be considered and a receiver authorized to pay past debts and charge the same against the corpus of the fund, where fail-

ure to make such payment would result in injury to, or would make it difficult to carry on, the business of the estate. An instance is given in Miltenberger v. Logansport, etc., Ry. Co., 106 U. S. 286, 1 Sup. Ct. 140, 27 L. Ed. 117. But Justice Holmes points out in the Gregg Case:

"The ground of such allowance as was made was not merely that the supplies were necessary for the preservation of the road, but that the payment was necessary to the business of the road—a very different proposition."

The decision in Moore v. Donahoo conformed to the principle recognized in this circuit in the earlier case of Spencer et al. v. Taylor Creek Ditch Co. et. al., 194 Fed. 635, 114 C. C. A. 407, where Judge Morrow, writing for the court, traced the doctrine of Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339, through Kneeland v. American Loan & Trust Co., supra, to Gregg v. Metropolitan Trust Co., supra, and held it to be the exception and not the rule that priority of liens can be displaced by general and unsecured claims.

We agree that the six months rule is not inflexible. The reason that six months is frequently taken as the limited time within which preferential claims must accrue is because usually a six months interval passes between the dates when installments of interest upon bonds fall due, and because mortgages often provide that, when an installment of interest is paid, current expenses to that time have either been paid or funds to pay them have been lawfully provided. But the law as laid down by the Supreme Court is that, while circumstances may exist which make it practically necessary to the business of a concern and the preservation of the property that pre-existing debts of certain classes should be paid by the receiver out of the earnings of the receivership, or even out of the corpus of the property, the discretion to make such preferential payments should be exercised with very great care. Westinghouse Air Brake Co. v. Kansas City Southern Ry. Co., 137 Fed. 26, 71 C. C. A. 1; High on Receivers (3d Ed.) § 394a; Street's Federal Equity Practice, § 2750 (1909).

In Illinois Trust & Savings Bank v. Doud et al., 105 Fed. 123, 44 C. C. A. 389, 52 L. R. A. 481 (Court of Appeals for the Eighth Circuit), the court, after a very elaborate review of the decisions of the Supreme Court prior to 1901, used this language with respect to the limitations applicable to the class of claims entitled to equitable preference:

"The test of the preferential equity of a claim is its consideration. If its consideration was a current expense of the operation of the mortgaged property, which inured to its benefit, and which was incurred in the ordinary course of its business, within a limited time anterior to the appointment of the receiver, the claim may be preferred. The Supreme Court has refused to apply the principle of the civil and maritime laws of awarding priority to the last creditor who furnished necessary repairs and supplies to a vessel to the distribution of the proceeds of the foreclosure of mortgages of quasi public corporations. Railroad Co. v. Cowdrey, 11 Wall. 459, 474, 482, 20 L. Ed. 199; Thompson v. Railroad Co., 132 U. S. 68, 74, 10 Sup. Ct. 29, 33 L. Ed. 256. If the consideration of a claim is not a part of the current expenses of the ordinary operation of the mortgaged property, but is a part of the expense of constructing a permanent addition or improvement to it, out of the ordinary course of its operation, neither the fact that it tended to conserve and improve the property and increase the security of the mortgagee, nor the fact that it was necessary to keep the mortgagor a going concern, nor the fact

that the mortgagor pledged or mortgaged the current income to secure it, will give the claim a preferential equity over the lien of a prior mortgage."

In Rodger Ballast Car Co. v. Omaha, K. C. & E. R. Co. et al., 154 Fed. 629, 83 C. C. A. 403, the same court carried its examination of decisions down to 1907; and in the recent case of Love et al. v. North American Co. et al., 229 Fed. 103, 143 C. C. A. 379, speaking through Judge Carland, said:

"The class of claims which under the decisions of the Supreme Court may lawfully receive an equitable preference in payment out of the income or out of the corpus of the property of a mortgaged railroad over the bondholders secured by a prior mortgage is limited to claims incurred for the current expenses of the ordinary operation of the mortgaged property in the usual course of the business of the mortgagor. The test of the preferential equity of a claim is its consideration. If its consideration was a current expense of the ordinary operation of the property of the mortgagor incurred in the usual course of its business, for labor, supplies, and like things, necessary for the operation of the railroad, within a limited time, usually not exceeding six months anterior to the appointment of the receiver, the claim may be preferred in payment; otherwise, it may not be."

In thus stating the law the court cites many federal decisions, including Chicago & A. R. Co. v. U. S. & Mex. Trust Co. et al., 225 Fed. 940, 141 C. C. A. 64, and Martin Metal Mfg. Co. v. Same, 225 Fed. 961, 141 C. C. A. 85.

In Chicago & A. R. Co. v. U. S. & Mex. Trust Co. et al., supra, the court held that the claim of preference to payment out of the corpus of the mortgaged property, because it was founded on services rendered which were absolutely necessary to the business of the railway to keep the road a going concern, so that the company's property would be preserved and its public duty discharged, was without ground, because in Gregg v. Metropolitan Trust Co., supra, the Supreme Court had decided that even a claim of such nature accruing within six months prior to the receivership may not be preferred in payment out of the corpus of the mortgaged property to the claims of the bondholders secured thereon in the absence of a diversion of income, found to be lacking. Judge Sanborn carefully considered the decisions of the Supreme Court as bearing upon two particular grounds: First, the diversion of income; and, second, the necessity or business policy of immediate payment—these two grounds being those upon which claims for current expenses for necessities of operation have been paid out of the corpus of the property. But the learned judge points out that Miltenberger v. Logansport, etc., Ry. Co., supra, and Union Trust Co. v. Illinois Midland Co., 117 U. S. 434, 6 Sup. Ct. 809, 29 L. Ed. 963, in both of which cases claims were allowed as necessary for immediate payment, were decided 15 years before the beginning of the series of decisions found in Kneeland v. American Loan & Trust Co., supra, Morgan's Co. v. Texas Central Ry., 137 U. S. 171, 11 Sup. Ct. 61, 34 L. Ed. 625, Thompson v. Valley R. R. Co., supra, Thomas v. Western Car Co., 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663, Southern Ry. Co. v. Carnegie Steel Co., 176 U. S. 257, 20 Sup. Ct. 347, 44 L. Ed. 458, Lackawanna Iron & Coal Co. v. Farmers' Loan & Trust Co., 176 U. S. 298, 20 Sup. Ct. 363, 44 L. Ed. 475, and Gregg v. Metropolitan Trust

Co., supra. And Moore v. Donahoo, supra, decided by this court, was cited by the court to sustain the proposition that, if a claim for the current expenses of the necessities of the operation of a railroad is payable in preference to the claims of secured bondholders out of the corpus of the property in any case in the absence of diversion of the income from such expenses, it is only when such preferential payment is necessary to keep the railroad a going concern, or when its preferential payment is necessary to prevent a loss at least equal to the amount of the payment. These cases, we believe, correctly state the general doctrine which must control our decision, and under it materials for extensions and betterments, as included in certain detailed lists incorporated in the record in the present case, must be declared not entitled to preference.

[2] With respect to service extensions, we believe they are not to be considered as repairs, but rather as construction items. Worn-out equipment, when replaced on an extensive scale, ought not to be classified as repairs, but as reconstruction. Additions to equipment are not current operating charges. Lackawanna Iron & Coal Co. v. Farmers' Loan & Trust Co., supra; Central Trust Co. of N. Y. v. Colorado, etc., Co. (D. C.) 200 Fed. 85; Toledo, etc., R. R. Co. v. Hamilton, 134 U. S. 296, 10 Sup. Ct. 546, 33 L. Ed. 905; International Trust Co. v. Townsend, etc., Co., 95 Fed. 850, 37 C. C. A. 396; Reyburn v. Consumers' G., F. & L. Co. (C. C.) 29 Fed. 561. In the last case the court disallowed a claim for meters, because meters are not a current necessity, but equipment constituting additions or extensions of the business.

[3] The payment of interest to bondholders entitled to the payment of interest in priority to the claims of creditors claiming is not a diversion. Central Trust Co. v. East Tenn., V. & G. R. Co., 80 Fed. 624, 26 C. C. A. 30.

Without carrying the discussion further, it is enough to say that in the present case the only goods furnished within the six months period were those of the value of $56.03 allowed by the lower court. The Crane Company stands, we think, as a creditor which sold goods to the Washington-Oregon Corporation with the expectation of realizing profits as in ordinary commercial transactions. It extended credit to the corporation, whereas the bondholders lent money to the corporation, looking solely to the security of the mortgage given by the corporation upon all of its then owned and after-acquired property and the income thereof. The Crane Company permitted its claim to run for a long time, part of it for several years; but the bondholders brought proceedings in foreclosure within a month of the time when their right to foreclosure accrued.

The Crane Company, having sold materials which do not fairly constitute operating supplies necessary to the business of the Washington-Oregon Corporation, and having sold them prior to that time preceding the appointment of the receiver within which courts of equity have announced that priority claims would accrue, and having shown no special equity upon which they can rest the right of preference, must fail as against the contract rights of the bondholders secured by the mortgage.

The decree is affirmed.

GILBERT, Circuit Judge (dissenting). There are two grounds on which I think it should be held in this case that the mortgagee, coming into a court of equity seeking equitable relief, and asking for the appointment of a receiver, should be required to do equity, and submit to the preferred payment of claims of the appellant which, within a reasonable time prior to the receivership, furnished goods to keep the mortgaged property a going concern, in the expectation of payment out of the income, but which has not been paid because of the diversion of the income to the payment of interest or betterments. One is the broad principle upon which the equitable right rests. As stated by Chief Justice Waite in Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339, the power to displace a mortgage upon the corpus or upon the earnings "rests upon the fact that, in the administration of the affairs of the company, the mortgage creditors have got possession of that which in equity belonged to the whole or a part of the general creditors. Whatever is done, therefore, must be with a view to a restoration by the mortgage creditors of that which they have thus inequitably obtained." An equitable right of so meritorious a nature should not, we think, be barred by an artificial rule of 6 months limitation, or by a lapse of time (within the statute of limitations) other than a delay which must result in prejudice to the mortgagee.

This, as I understand it, is the purport of all the decisions of the Supreme Court of the United States, and in no reported decision of that court is it found that a period of 6 months or any precise period of limitation has been fixed. In Hale v. Frost, 99 U. S. 389, 25 L. Ed. 419, the interveners had furnished supplies to the machinery department of the railway company nearly 3 years before the receiver was appointed, and 16 months before the receivership had received the notes of the railway company for the balance found due. The court held that they were entitled to payment in full. In Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675, 28 L. Ed. 596, the court approved the payment of the intervener's claim for a balance, due 11 months before the receivership, for coal furnished for running the railway company's locomotives. In Southern Railway Co. v. Carnegie Steel Co., 176 U. S. 257, 20 Sup. Ct. 347, 44 L. Ed. 458, the decision in Burnham v. Bowen was followed. In Va. & Ala. Coal Co. v. Central R. R. & Banking Co., 170 U. S. 355, 18 Sup. Ct. 657, 42 L. Ed. 1068, the period was 8 months. These decisions establish the principle that every railroad bondholder, in accepting his bonds, impliedly agrees that the current debts of the mortgagor incurred in the ordinary course of the business shall be paid from the income before he shall have any claim thereon.

The case of Gregg v. Metropolitan Trust Co., 197 U. S. 183, 25 Sup. Ct. 415, 49 L. Ed. 717, does not hold to the contrary. In that case it was expressly found that there had been no diversion of income by which the mortgagee had profited or otherwise, and the purport of the decision was that claims for supplies furnished to a railroad company within 6 months before the appointment of a receiver are not entitled, under the general rule, to precedence over a lien expressly created by a mortgage recorded before the contracts for such supplies were made. But in that case the court cited and approved its own decisions which are hereinabove referred to.

Other federal courts have denied the 6 months rule. In Farmers' Loan & Trust Co. v. Kansas City & N. W. R. Co. (C. C.) 53 Fed. 182, Judge Caldwell allowed claims that had accrued 18 months prior to the receivership, and said:

"There is no fixed rule barring preferential debts contracted more than 6 months before the appointment of the receiver. There is no '6 months rule.'"

In that case the court referred to Central Trust Co. v. St. Louis, A. & T. Ry. Co. (C. C.) 41 Fed. 551, in which case an interval of from 2 to 3 years had elapsed between the dates of the mortgages and the receivership, and stated that Mr. Justice Brewer, when the question thereafter arose as to what debts should have priority, said:

"I did not understand from the parties making the application for a receiver that there was any desire or thought of cutting off any just claims accruing during the brief period which has elapsed since their mortgage was given, and, if counsel or party had any such idea, they much mistake my judgment in the premises."

Again, in Northern Pacific R. Co. v. Lamont, 69 Fed. 23, 16 C. C. A. 364, the Circuit Court of Appeals for the Eighth Circuit said:

"A preferential debt is not barred, though contracted more than six months before the appointment of a receiver. As to such debts, there is no arbitrary '6 months rule,' as has been often decided."

In New York Guaranty & Indem. Co. v. Tacoma Railway & M. Co., 83 Fed. 365, 27 C. C. A. 550, this court held that a claim was not barred which accrued 22 months prior to the receivership.

In the present case the appellant's claim has all the elements essential to an equitable preference: (1) The goods that were furnished were of the nature of those for which such a claim is preferred. About 25 per cent. of the appellant's claim is for materials furnished which were used for repairs and replacements of public service systems for furnishing water, gas, and electric light; about 37 per cent. was for goods furnished and used for service connections to customers; and about 42 per cent. was for making extensions and betterments, and for laying new pipes and mains in the place of those which had become old or unfit. (2) The materials furnished were such as were necessary to conserve the property and retain the franchises of a public service corporation. In Union Trust Co. v. Morrison, 125 U. S. 609, 8 Sup. Ct. 1008, 31 L. Ed. 825, the court, in giving preference to such a claim, said: "The ground of the claim is that a portion of the property covered by the mortgage, being in peril of abstraction and loss, was rescued and saved to the mortgage by the act of the petitioner." (3) The evidence shows that the income of the corporation was diverted to the payment of the interest due to the mortgage bondholders. (4) The goods were sold and credit extended by the appellant in reliance upon payment thereafter out of the income of the corporation.

The appellees contend that the appellant's claim is mostly for reconstruction, and that preferences are allowable only for current supplies, and are denied for betterments and new construction or reconstruction, citing Thomas v. Western Car Co., 149 U. S. 95, 13

Sup. Ct. 824, 37 L. Ed. 663, Lackawanna Iron & Coal Co. v. F. L. & T. Co., 176 U. S. 298, 20 Sup. Ct. 363, 44 L. Ed. 475, Toledo R. R. Co. v. Hamilton, 134 U. S. 296, 10 Sup. Ct. 546, 33 L. Ed. 905, and Porter v. Pittsburg & Bessemer Steel Co., 120 U. S. 649, 7 Sup. Ct. 741, 30 L. Ed. 830. In the first of these cases the claim, which the court denied, was a claim for rental due for the use of the railroad cars of another company. The court said that the debt was not one which was made necessary for the business of the railroad company, or the preservation of its property. In Toledo R. R. Co. v. Hamilton, the court held that a railroad mortgage cannot be displaced in favor of a claim arising from building a dock on the railroad property, that the building of such a dock was original construction and not the keeping up as a going concern a railroad already built, that the amount due was no part of the current expenses of operating the road, and that there was as to the claimant no diversion of current earnings. In Porter v. Pittsburg & Bessemer Steel Co., the railroad, at the time when the claims accrued, had not been opened for use. There was no "going concern." There was no diversion of income to pay interest on mortgage bonds, and the claims were not for expenses or repairs which went toward keeping a completed road in operation. They all arose from the original construction of the road. In Lackawanna, etc., Co. v. Farmers' Loan, etc., Co., the claim was for rails furnished to an extent which led the court to say that it amounted to "the construction of a new road"; that the claim was not for materials used, and was not a "current debt made in the ordinary course of business." In that case the court thus summed up the decisions:

"This court has uniformly held that in the distribution of the current earnings of an insolvent railroad company, whose property is being administered by a receiver, mortgage creditors could not be postponed to unsecured creditors, unless the debts due the latter were of the class known as current debts arising in the ordinary course of business and properly chargeable upon current receipts. The decision in each case has been more or less controlled by its special facts."

The cases just referred to are cases of the classes in which claims to preference are disallowed. But among the cases which more closely resemble the case at bar, and which are controlling here, are: Fosdick v. Schall, in which the court defined the allowable claims to be those which were "for necessary operating and managing expenses, proper equipment, and useful improvements"; Union Trust Co. v. Illinois Midland Ry. Co., 117 U. S. 434, 6 Sup. Ct. 809, 29 L. Ed. 963, in which necessary repairs and operating expenses were held to include the expense of rails, ties, turntables and fences; Miltenberger v. Logansport Ry. Co., 106 U. S. 286, 1 Sup. Ct. 140, 27 L. Ed. 117, where it was held that a claim for freight balances was entitled to preference on the theory that a failure to pay such balances might disrupt traffic relations with other carriers and thus cripple the road; and Southern Railway Co. v. Carnegie Steel Co., supra, in which the claim was for steel rails furnished to the railway company, and in which the court held the allowable claims for

preference to be debts of a railway company contracted in the ordinary course of its business.

The appellees deny the application of the doctrine of Fosdick v. Schall to water companies, and they refer to the fact that the material furnished by the appellant was nearly all furnished for water supply. They cite Wood v. Guaranty Trust Co., 128 U. S. 418, 9 Sup. Ct. 131, 32 L. Ed. 472. But that case does not hold that the doctrine is inapplicable to water companies. The court declined to express an opinion on that question, and went no further than to observe that the doctrine of Fosdick v. Schall had never yet been applied to any case except to that of a railroad. Nor does any federal case hold the doctrine inapplicable to water companies. In Reyburn v. Consumers' Gas, Fuel & Light Co. (C. C.) 29 Fed. 561, Judge Blodgett held the doctrine applicable to a gas, fuel and light company, and said that the doctrine of Fosdick v. Schall is "that, for the purpose of keeping works of a public character, within which the works of this company may be properly included, in operation, those who have given the company credit for the supplies necessary to keep the works in operation—current operating supplies—are to have a lien." In Illinois Trust & Savings Bank v. Ottumwa Electric Ry. (C. C.) 89 Fed. 235, the doctrine was held applicable to a company engaged in operating an electric railway system, an electric lighting plant, and a steam-heating plant. The decision in that case was on appeal affirmed in Illinois Trust & Savings Bank v. Doud, 105 Fed. 123, 44 C. C. A. 389, 52 L. R. A. 481.

When the question of the applicability of the doctrine is approached, no distinction in principle is discovered between a railway company and a water company organized to supply a municipality with water. Both are corporations of public utility. Both enjoy the right of eminent domain. Both operate under a public franchise, and the service rendered to the public by a railroad company in the transportation of passengers and freight is of no more vital importance than the service of a water company in furnishing a city with wholesome water, with the attendant advantage of protection against fire and disease. I think it should be held that the doctrine is applicable to the corporation here under consideration.

Another, and I think a conclusive, ground for reversing the decree, is that the corporation here in receivership is a corporation of the state of Washington, in which state the appellant, a foreign corporation, was doing business, and by the laws of which the contracts between the parties were controlled. The Supreme Court of Washington in Bellingham Bay Imp. Co. v. Fairhaven & N. W. Ry. Co., 17 Wash. 371, 49 Pac. 514, held that the right to priority of lien over a mortgage debt in favor of a claim for supplies furnished a railway company is not lost by laches in asserting it, if an action at law to enforce the demand has not been barred by the statute of limitations. After citing Hale v. Frost, 99 U. S. 389, 25 L. Ed. 419, Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675, 28 L. Ed. 596, and Farmers' L. & T. Co. v. Kansas City & N. W. R. Co. (C. C.) 53 Fed. 182, and quoting from the latter case Judge Caldwell's language,

in which he said, "There is no fixed rule barring preferential debts contracted more than six months before the appointment of the receiver," the court said:

"Upon principle, it would seem but just that a party should, in the absence of special circumstances of controlling importance, be entitled to equitable relief for the full period in which, according to the statute, an action might be maintained at law to enforce the demand. If the lapse of three years is necessary under the statute to bar the debt, there appears to be no sufficient reason, generally speaking, why the equitable right should be barred within a shorter period."

Such has been the established and settled rule of the state of Washington for 20 years. The appellant had the right to rely upon it as the law of the state, and it may be assumed that it did so when it sold the goods and extended the credit, and the trustee and the bondholders were chargeable with notice of it.

Concerning the question of the binding force upon federal courts of the decisions of local state courts, Judge Harlan, in Kuhn v. Fairmont Coal Co., 215 U. S. 349, 30 Sup. Ct. 140, 54 L. Ed. 228, after reviewing the decisions, announced these rules:

"(2) Where, before the rights of the parties accrued, certain rules relating to real estate have been so established by state decisions as to become rules of property and action in the state, those rules are accepted by the federal courts as authoritative declarations of the law of the state. * * * (4) So, when contracts and transactions are entered into and rights have accrued under a particular state of the local decisions, or when there has been no decision by the state court on the particular question involved, then the federal courts properly claim the right to give effect to their own judgment as to what is the law of the state applicable to the case, even where a different view has been expressed by the state court after the rights of parties accrued. But even in such cases, for the sake of comity and to avoid confusion, the federal court should always lean to an agreement with the state court, if the question is balanced with doubt."

It seems clear that the case which is now before us comes within the first of these rules, and that it is one of those cases where a rule established by state decision has become a rule of property. This case does not involve the application of general principles of commercial law, or of contracts. It involves the rights of parties to the proceeds of property located in the state of Washington which is held under a mortgage made in that state.

It is uniformly held that the decisions of state courts as to the rights of parties under mortgages, whether of real or personal property, are binding upon the federal courts, notwithstanding that the state decisions involve no question of the construction of a state statute or Constitution. In Etheridge v. Sperry, 139 U. S. 266, 277, 11 Sup. Ct. 565, 569 (35 L. Ed. 171), it was said:

"We are aware that there is great diversity in the rulings on this question by the courts of the several states; but, whatever may be our individual views as to what the law ought to be in respect thereto, there is so much of a local nature entering into chattel mortgages that this court will accept the settled law of each state as decisive in respect to any case arising therein."

The doctrine of that case was applied by this court in Peterson v. Sabin, 214 Fed. 234, 130 C. C. A. 608, in which, after quoting Etheridge v. Sperry, this court said:

"We are to inquire, therefore, whether the question here presented has been directly or in effect determined by the Supreme Court of Oregon. That court has distinctly held that, where a mortgagee has given the mortgagor unlimited power to dispose of the mortgaged property for his own use, the mortgage is void as to the creditors of the mortgagor, even though there was no actual fraudulent intent on the part of either of the parties to the mortgage."

And this court followed the construction so established by the decision of the state court. In City of Omaha v. Omaha Water Co., 192 Fed. 246, 112 C. C. A. 504, the court said:

"The decisions of the Supreme Court of Nebraska concerning the nature and extent of the estate or rights of mortgagees in mortgaged property are controlling upon us."

In Dugan v. Beckett, 129 Fed. 56, 63 C. C. A. 498, it was held that, in determining whether a chattel mortgage executed by a bankrupt was fraudulent on its face, the federal courts follow the decisions of the courts of last resort of the state in which the controversy arose; the law on the subject being regarded as a rule of property. In Re Buchner (D. C.) 202 Fed. 979, it was held that priority of mortgages executed in Illinois on land located in that state is to be determined in accordance with the decisions of the Illinois Supreme Court. In Re Haywood Wagon Co., 219 Fed. 655, 135 C. C. A. 391, the court said:

"In following the decisions of the local courts upon such a question we are following the rule which the Supreme Court laid down in Etheridge v. Sperry, 139 U. S. 266 [11 Sup. Ct. 565, 35 L. Ed. 171]."

In Haggart v. Wilczinski, 143 Fed. 22, 74 C. C. A. 176, the court said:

"The settled law of the state on the subject of mortgages is regarded as a rule of property."

In Percy Summer Club v. Astle, 163 Fed. 1, 90 C. C. A. 527, a case which involved the construction to be given the language of a deed, the court said:

"Where, however, the decision of the state court, though based upon the common law, is deemed of an application especially local, this decision is given an authority almost as great as would be assigned to it if it construed a state statute"

—citing Burgess v. Seligman, 107 U. S. 20, 33, 2 Sup. Ct. 10, 21 (27 L. Ed. 359), where it was said:

"Since the ordinary administration of the law is carried on by the state courts, it necessarily happens that by the course of their decisions certain rules are established which become rules of property and action in the state, and have all the effect of law, and which it would be wrong to disturb."

In Dooley v. Pease, 180 U. S. 126, 21 Sup. Ct. 329, 45 L. Ed. 457, a case which involved the power of the owner of personal property to sell it and still remain in the possession of it, so as to exempt it from seizure and attachment, the court said:

"It is equally well established that the courts of the United States regard and follow the policy of the state law in cases of this kind."

In Guffey v. Smith, 237 U. S. 101, 35 Sup. Ct. 526, 59 L. Ed. 856, concerning the rights which pass under an oil and gas lease, the court, after citing the decisions from the Supreme Court of the state, said:

"These decisions constitute rules of property, and must be accepted and applied in passing upon the complainants' rights."

In General Electric Co. v. Richardson (D. C.) 228 Fed. 758, the court followed the rule established by the Supreme Court of Pennsylvania that conditional sales are void so far as they affect the rights of bona fide purchasers, and held that, the contract being a Pennsylvania contract, the law of that state was a rule of property to be applied as such in the courts of the United States in any controversy over the right of property, whether the right was invoked in an action at law or in proceedings in equity. And in Gilman v. Lamson Co., 234 Fed. 507, —— C. C. A. ——, it was held that where, at the time of the making of a contract to be performed in the state where made, there is a settled rule of decision of that state as to the damages recoverable for its breach, such rule governs in an action for its breach in the federal court.